THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES CAMPBELL, Defendant-Appellant.

First District (6th Division)   No. 1—91—1220

Opinion filed December 4, 1992.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Matthew L. Moodhe, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Following a jury trial, defendant, James Campbell, was found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1)) and aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(b)) of his 11-year-old daughter, and was

sentenced to a term of 10 years. Defendant appeals, contending that the hearing conducted pursuant to section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 115—10) failed to comport with the statutory requirements; the entry of judgment on the aggravated criminal sexual abuse conviction should be vacated; and that improper prosecutorial comments were made during closing arguments.

The record reveals the following pertinent facts. The victim was born on June 22, 1978, and lived with her mother and defendant, her natural father, until he moved out in 1989. Thereafter, the victim saw her father approximately once a week. The victim testified that on the morning of December 29, 1989, she was at home with her mother, who was preparing to go to work when defendant arrived. Shortly after her mother left the apartment, the victim, dressed in a nightgown, went into her bedroom and listened to the radio. Defendant called to the victim from her mother's bedroom. Defendant was lying in the bed and had a blanket covering him. Defendant was not wearing any clothes. Defendant told the victim to get on top of him, and inserted his penis into her vagina. Defendant then moved his body up and down against the victim. After engaging in intercourse for one or two minutes, defendant told the victim to take a shower. Thereafter, defendant took the victim out to the store to buy some food. They did not discuss what had happened; however, defendant told the victim that she better not tell her mother about what had occurred.

On January 2, 1990, the victim was at her cousin Zaundra's apartment. Zaundra was 13 years old. The victim testified that she told her cousin about the incident which had occurred with her father four days earlier. At that point in the trial, defendant objected to the victim's testimony concerning what she had told Zaundra. Defendant contended that the victim's testimony regarding her statement to Zaundra was hearsay and inadmissible unless the trial judge conducted a section 115—10 hearing to determine the reliability of the statement. (Prior to trial, the court had inquired whether the State would seek to introduce outcry statements made by the victim concerning the incident that would require an additional hearing. The State indicated that it did not anticipate adducing that type of testimony, thereby negating the need for such hearing prior to trial.)

After conducting a cursory analysis of the statute and case law, including *People v. Salas* (1985), 138 Ill. App. 3d 48, 485 N.E.2d 596, the judge determined that a section 115—10 hearing was appropriate. Outside the presence of the jury, the judge asked the victim preliminary questions concerning her disclosure to her cousin. The victim

stated that about four days after the incident, she was at the apartment of Zaundra and Zaundra's mother. Zaundra told the victim that she was "acting funny" and asked the victim whether something was wrong. After the victim told Zaundra what had happened, Zaundra went into another room and told her mother about the incident. A few minutes later, the victim's mother arrived at the apartment. The judge inquired whether Zaundra and her mother would be available for cross-examination. The judge determined that the victim's testimony concerning the time, content, and circumstances of the statement provided sufficient safeguards of reliability. No other witnesses were called to testify at the section 115—10 hearing.

The victim's mother testified at trial that she met defendant in the summer of 1976 and that they began living together shortly after the victim was born. They lived together until early 1989, at which time defendant began having personal problems and moved out of the apartment. On the morning of December 29, 1989, she left her daughter and defendant at the apartment while she went on a job interview. The victim's mother described the victim's demeanor as withdrawn and moody for three days following the incident, and that she persistently asked her daughter whether she had a problem.

On January 2, 1990, the mother went to her sister's residence after work. The victim, Zaundra, and the mother's sister were present when she arrived. The mother had a conversation with the victim, and she next talked to her sister. After speaking with her sister, she called the police. The victim was then taken to a hospital for examination. The mother described the relationship between her daughter and defendant as normal.

Zaundra testified that on January 2, 1990, she was at home with her mother and the victim. Zaundra stated that she and the victim "were like sisters." Zaundra stated that she spoke with the victim on that day and she seemed nervous and upset. Zaundra did not testify to the content of the conversation she had with the victim.

Sergeant Larry Strzechowski testified that he and his partner were assigned to investigate the victim's complaint against defendant. On January 3, 1990, Strzechowski picked up defendant at his place of employment, advised him of his *Miranda* rights, and drove him to the police station. Thereafter, Assistant State's Attorney Penny Gainer testified that she again read defendant his *Miranda* rights. Gainer informed defendant of the allegations made by his daughter against him and prepared a handwritten statement of his account of the events which he signed.

In his statement, defendant indicated that he arrived at the victim's apartment on the morning of December 29, 1989, around 7 a.m., and that the mother left for work about three hours later. Defendant went into the mother's room and was lying down on the bed. About one-half hour later, the victim came into the room wearing a tee-shirt and underpants. The victim got into bed with defendant, and the two of them "played with each other for a while." The victim got on top of defendant. Defendant had his shirt and his pants on. Defendant began to hold his penis after unzipping his pants. Defendant touched his penis to the victim's vagina while her underpants were on, but moved to one side so that contact could be made. The victim moved up and down on top of defendant while he held his penis against her vagina. Defendant did not put his penis inside the victim's vagina. Shortly thereafter, defendant asked the victim to take a shower because he was going to take her for something to eat. They went to a restaurant after the victim showered. Defendant first started having his penis touch the victim's vagina when she was about nine years old.

Defendant testified that at the time of the alleged incident, his relationship with the mother was not good, and that they had problems concerning money the victim's mother wanted from defendant for the support of the victim. Defendant denied any inappropriate touching of the victim, or that she touched him, and denied having sex with his daughter. Defendant denied signing the statement prepared by Gainer, but that he did sign a statement prepared by the police. In rebuttal, Gainer testified that no other handwritten statements were prepared other than the one which was signed by defendant.

During closing arguments, the prosecutor stated that we must hear and listen to our children, and when things happen to children, they must be believed and that the victim must be believed. The judge overruled defendant's objection to the statement.

On appeal, defendant first contends that the section 115—10 hearing conducted by the trial court failed to comport with the mandates of the statute. Specifically, defendant complains that although the section 115—10 hearing was called during the State's direct examination of the victim, the State neither before trial nor during the hearing itself gave notice of all the outcry evidence it sought to place into evidence. Defendant argues that the State failed to comply with the statutory requirement to give the defense "reasonable notice of [its] intention to offer the statement," nor did the State provide defendant with "the particulars of the statement" it sought to offer. Ill. Rev. Stat. 1989, ch. 38, par. 115—10(d).

■■ Section 115—10 provides in relevant part:

"§115—10. (a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such an act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.
***

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

Prior to the passage of section 115—10 of the Illinois Code of Criminal Procedure, Illinois law largely limited testimony concerning corroborative complaints to rape cases and to the fact that a complaint was made. Section 115—10 was initially enacted to extend the common-law corroborative-complaint doctrine to complaints of young victims of sexual offenses other than rape. (See Ill. Rev. Stat. 1983, ch. 38, par. 115—10; see also *People v. Morton* (1989), 188 Ill. App. 3d 95, 543 N.E.2d 1366.) However, the courts soon recognized that in order to effectively corroborate the fact that a complaint was made, the testimony pertaining to the complaint necessarily had to include some detail. (See *People v. Thompson* (1990), 198 Ill. App. 3d 417, 421, 555 N.E.2d 1122, citing *People v. Deal* (1989), 185 Ill. App. 3d 332, 541 N.E.2d 695.) The legislature amended section 115—10 effective January 1, 1988. As amended, section 115—10 now permits hearsay testimony concerning details of the offense beyond the mere fact that a complaint was made. (*People v. Thompson*, 198 Ill.

App. 3d 417, 555 N.E.2d 1122; *People v. Morton,* 188 Ill. App. 3d 95, 543 N.E.2d 1366; *People v. Kelly* (1989), 185 Ill. App. 3d 43, 540 N.E.2d 1125.) Thus, the judge's reliance upon *People v. Salas* was misplaced, because the trial in this case occurred subsequent to the amendment of section 115—10.

■ Defendant correctly asserts that the State, as the proponent of the evidence, bore the burden of proving that the "time, content, and circumstances" of the victim's statements provided "sufficient safeguards of reliability." (See *Idaho v. Wright* (1990), 497 U.S. 805, 111 L. Ed. 2d 638, 110 S. Ct. 3139.) Defendant argues that protections afforded him pursuant to the confrontation clause were violated because the statements offered did not provide sufficient safeguards of reliability. In order for corroborating statements such as those offered at trial to be admissible under the confrontation clause, "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Idaho v. Wright,* 497 U.S. at 822, 111 L. Ed. 2d at 657, 110 S. Ct. at 3150.

■ Defendant complains that at trial, outcry testimony was elicited from the victim, her mother, Zaundra, Officer Strzechowski and Assistant State's Attorney Gainer; however, defendant did not raise this issue in his post-trial motion. Nor did defendant object at trial to the lack of sufficient notice or detail of the victim's testimony, nor did he raise this issue in his motion for a new trial. We find, therefore, that defendant's failure to expressly raise this issue in his post-trial motion results in waiver upon review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124; *People v. Mitchell* (1991), 215 Ill. App. 3d 849, 576 N.E.2d 78.) While defendant did attack the propriety of the section 115—10 hearing, he challenged it only on the basis of the admissibility of testimony concerning an unrelated incident involving consensual sex between the victim and two minors two days after this incident occurred.

Even assuming that defendant did not waive this issue, careful review of the record finds it devoid of any testimony from the victim's mother, Zaundra, Strzechowski and Gainer of any detail of the conversation in which the victim first related to Zaundra that defendant forced her to have sexual relations with him. Indeed, the victim herself only testified that the first person she told about the incident was Zaundra, which precipitated the section 115—10 hearing. Once the hearing was completed and the trial resumed, the court sustained defendant's objection during the victim's testimony concerning what Zaundra told her mother and the victim's mother. The victim's other

testimony in this regard simply stated that she told Zaundra, and no further detail was elicited. Defendant acknowledges that the jury never heard the content of the outcry statement, and that most of the testimony did not concern details of what was said, only that the victim either "told me" or "told what happened." As such, we reject defendant's contention that he was deprived of a fair trial because the other purported outcry witnesses were not subjected to a section 115–10 hearing.

Review of the testimony of the victim's mother reveals that she had a conversation with her daughter and her sister, after which she called the police. Similarly, Zaundra testified that she talked with the victim, and thereafter she spoke with her mother, and later the mother of the victim. Strzechowski also stated only that he spoke with the victim. Admittedly, Strzechowski later testified that Gainer told defendant that the victim had told her that she had sexual intercourse with her father, and that he also told defendant that the victim told him that she had sexual intercourse with her father. However, we find the effect of such testimony harmless under the circumstances in view of the substantial corroborating evidence and the fact that none of the details of the conversation was elicited at trial.

■ Defendant next contends that the court should vacate his conviction for aggravated criminal sexual abuse. Specifically, defendant contends that the trial court improperly entered judgment against defendant for aggravated criminal sexual assault and aggravated criminal sexual abuse, a lesser included offense, in violation of the "one act-one crime" rule. However, at sentencing the court stated there will be no sentence on the aggravated criminal sexual abuse conviction because for purposes of sentencing, it merged with the conviction for aggravated criminal sexual assault. While it is axiomatic that there is no final judgment in a criminal case until the imposition of sentence, and, in the absence of a final judgment, an appeal cannot be entertained (*People v. Caballero* (1984), 102 Ill. 2d 23, 464 N.E.2d 223; *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180; *People v. Warship* (1974), 59 Ill. 2d 125, 319 N.E.2d 507), it does not follow, however, that the conviction must be vacated. Thus, there can be no appeal of defendant's conviction of aggravated criminal sexual abuse in view of the absence of an imposition of sentence.

■ Finally, defendant complains that he was denied a fair trial because of instances of prosecutorial misconduct during closing arguments. Defendant contends that the State attempted to attach substantial weight behind the State's key witnesses as falling within inherently believable categories, including child sexual complainants,

their mothers, police and prosecutors. However, defendant failed to include this issue in his post-trial motion for a new trial, which results in waiver upon review. (*People v. Fields* (1990), 135 Ill. 2d 18, 552 N.E.2d 791; *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) Nor do we find that the comments made during closing argument deprived defendant of a fair trial or were so egregious as to warrant the application of the plain error doctrine. In order that statements made in closing arguments be considered plain error, they must be either "so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process." (*People v. Phillips* (1989), 127 Ill. 2d 499, 524, 538 N.E.2d 500.) In the present case, we do not find that the comments made by the State in closing argument should be characterized as plain error.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.