SECOND DIVISION

MARCH 20, 2001

1-98-4203

PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court

Plaintiff-Appellee ) of Cook County

)

) No. 96 CR 25194

)

CRAIG CHILDRESS, ) The Honorable

) Michael Bolan, 

Defendant-Appellant. ) Judge Presiding.

JUSTICE COUSINS delivered the opinion of the court:

The defendant, Craig Childress, was convicted of attempted aggravated criminal sexual assault following a bench trial and sentenced to 29 years in prison.  
Defendant was acquitted of attempted murder.  The defendant filed a timely notice of appeal.

On appeal, the defendant argues that: (1) he was denied his right to a speedy trial; (2) the trial court abused its discretion in ruling that the prosecution could introduce evidence of defendant's prior crimes in rebuttal to show intent; (3) the State failed to prove defendant guilty of attempted aggravated criminal sexual assault beyond a reasonable doubt; (4) defendant's conviction for attempted aggravated criminal sexual assault was legally inconsistent with his acquittal for attempted murder; (5) multiple sentencing errors entitle defendant to a new sentencing hearing; and (6) he was denied the effective assistance of counsel.

BACKGROUND

Defendant was charged with attempted first-degree murder (count I) and two counts of aggravated criminal sexual assault (counts II and III).

Before trial, defendant filed several 
pro se
 motions to dismiss defense counsel from the public defender’s office, alleging that counsel was engaged in a conspiracy to "railroad him" into imprisonment.  In his written motions, defendant alleged that counsel withheld discovery from him and discussed pending charges with the State’s Attorney.  The judge declined to entertain defendant’s 
pro se
 motions and advised defendant that he could not proceed 
pro se
 and simultaneously exercise his right to counsel.  Defendant indicated that he required an attorney to represent him and his counsel subsequently declined to adopt defendant’s motions.  On September 9, 1997, the trial court again denied defendant’s motion to dismiss counsel where he alleged that counsel failed to aid him in a separate civil case.  The trial court also refused to allow defense counsel to withdraw, although defense counsel asserted that defendant had filed Attorney Registration and Disciplinary Committee (ARDC) complaints and lawsuits against him.  In January 1998, a supervising attorney from the public defender’s office filed an appearance as co-counsel.  From that point onward, he was the only attorney that appeared on behalf of defendant.  Defendant filed no ARDC complaints or lawsuits against subsequent counsel.

Before trial, the State filed notice of its intent to present evidence of other crimes, consisting of a 1988 rape, burglary and related convictions in Kentucky and a misdemeanor conviction in Canada.  The State conceded that none of the convictions could be offered as evidence of 
modus operandi
, but said that they were offered as evidence of intent.  Defense counsel argued they were too remote from and dissimilar to the charged offenses to satisfy the requirements for admission as evidence of intent.  The trial court ruled that the Kentucky convictions would be admissible only in rebuttal to prove intent.  Because of this ruling, defendant alleges that he did not testify.

The State called several witnesses including the victim M.K., M.K.'s neighbor Jeffrey Ray, Officer Patricia Gill and Detective Rinaldo Guevara.  M.K. testified that on May 5, 1996, she first met defendant at her apartment while she was hosting a party.  Defendant was a houseguest of M.K.’s brother and sister-in-law, Jennifer.  M.K. did not have a conversation with defendant that evening and he left with Jennifer.  Later that week, Jennifer complained of having an indefinite houseguest so M.K. suggested that defendant could spend the night at her apartment on the night of May 14, and Jennifer could pick him up the next morning.

On May 14, 1996, M.K. worked as a bartender at Lottie’s.  That evening, Jennifer dropped defendant off at Lottie’s and introduced defendant to several friends before she left.  M.K. served defendant several drinks but did not speak to him at that time.  Around 11 p.m., defendant, M.K. and two of M.K.’s friends left for another bar, the Double Door.  M.K. consumed two beers and defendant drank a gin and tonic.  Defendant was involved in a scuffle because he picked up the wrong coat and was kicked out of the bar.  M.K. and her friends met defendant at another bar.  Defendant was falling asleep at the bar with a drink in front of him.  M.K. stated she was embarrassed by defendant's behavior and decided to go home.  

When M.K. and defendant arrived at her apartment, defendant wandered into her bedroom.  M.K. informed him that he would be sleeping in the guest bedroom down the hall.  M.K. was clearing laundry from the guest bed when the phone rang.  The phone was located on the wall just outside the bedroom.  As soon as M.K. hung up the phone, defendant struck her with his fist on the side of her head.

M.K. fell and defendant continued to hit her in the face.  Defendant threw M.K. on the guest bed and continued to punch her.  Defendant choked M.K. and said "I’m going to kill you, you stupid cunt, you bitch.  I’m going to rape you."  M.K. believed he said it about 15 times during the attack.  M.K. was able to kick defendant off her and ran into the kitchen screaming that defendant could rape her but not kill her.  

M.K.’s downstairs neighbor Jeffrey Ray testified that he heard banging noises from upstairs.  He heard M.K. scream help and "I’m not going to let you rape me."  He told his roommate Naomi to call the police.  Ray grabbed a two-by-four and went upstairs to M.K.’s apartment.

M.K. testified that she ran from the kitchen to the front door and unlocked one of the two locks on the door.  Defendant grabbed her ear with his teeth and threw her on the floor.  Defendant bit M.K. and ripped off her shirt and bra.  At this point, defendant was bare chested, bare foot and his pants were unzipped.  Defendant called M.K. a "stupid bitch" and choked her.  Ray then pounded on the front door.

When defendant turned to the door, M.K. ran to the door, unlocked it and ran out.  Ray, who still had the two-by-four over his shoulder, noticed defendant was bare chested before he slammed the door.  Ray also saw that M.K. was unclad from waist up.  M.K. ran down the stairs and Naomi pulled M.K. into her apartment.  

The police arrived 5 or 10 minutes later.  M.K. said that she met them outside and spoke to Officers Murphy and Kurian.  M.K. denied that she told the officers that there was a verbal argument between defendant and herself.  The police searched M.K.’s apartment, but defendant was gone.  M.K.’s neighbors called Jennifer and M.K. called Officer Patricia Gill.  Jennifer threw M.K.’s blouse and bra and defendant’s belongings into the garbage.    

Officer Patricia Gill testified that she returned M.K.'s phone call on the morning of May 15, 1996.  Gill suggested that M.K. go to the hospital and that Gill would meet her afterwards.  When Gill saw M.K. at her apartment later that day, she noticed that M.K. had been beaten severely: her eyes were black and blue, her face was swollen red and there was dried blood on her neck.  M.K. told Gill about the attack and showed Gill human bite marks on her upper back and arm.  Officer Gill retrieved M.K.'s torn blouse and bra and defendant's shoes, shirt and coat from M.K.'s apartment and placed them in inventory at the Chicago police department.  

On May 24, 1996, Detectives Rinaldo Guevara and Ernie Halvorsen interviewed M.K. and Jeffrey Ray about the incident.  They proceeded to Area 5, where Ray identified defendant out of a photo array.  A warrant was obtained for defendant's arrest on May 26, 1996.  In September 1996, the detectives learned of defendant's whereabouts and proceeded to Abilene, Texas, to extradite him.

The court denied defendant's motion for directed verdict.  The defense presented two witnesses: Officer Robert Murphy and Officer Bobby Kurian.  Officer Murphy testified that he met M.K. on May 15, 1996.  Officer Murphy searched M.K.’s apartment but did not find defendant.  Murphy testified that M.K. told him that she had been on the telephone and that defendant woke up and began to beat her in the face.  Murphy stated that M.K. mentioned a verbal argument without providing details.  Murphy further stated that M.K. did not tell him that defendant threatened to kill and rape her and he classified the incident as a simple battery.  

Officer Kurian agreed that M.K. told the officers that defendant was asleep and woke up just before they had a verbal argument.  Kurian stated that M.K. never mentioned that defendant choked her or said that he was going to rape and kill her.  

Defendant was acquitted of attempted murder (count I) and convicted on both counts of attempted aggravated criminal sexual assault (counts II and III).  The trial court denied defendant's motion for a new trial.  In aggravation, victims P.L. and C.V. testified concerning defendant's convictions in Kentucky that were entered on June 19, 1989.  A certified statement of conviction revealed that defendant was previously convicted on five separate counts in Kentucky and sentenced as follows: (1) rape of P.L. in the first degree (10 years); (2) criminal attempt sodomy of P.L. (5 years); (3) burglary of C.V.'s residence (5 years); (4) unlawful imprisonment of C.V. (5 years); and (5) assault of C.V. (5 years).  All five counts were to be served concurrently pursuant to defendant's guilty plea.  Defense counsel argued in mitigation that defendant was a 32-year-old man who was exposed to drugs, alcohol, physical abuse and neglect as a child.  Defendant had received a G.E.D. and served in the Navy as an aviation machinist.  He earned a degree in addiction counseling while serving his prison term in Kentucky and was now confined to a wheelchair due to injury. 

The State argued that defendant was eligible for a sentence of 4 to 15 years because his convictions were Class 1 felonies.  The trial court refused to sentence defendant to consecutive terms because both counts II and III stemmed from the same transaction.  Instead, the court sentenced defendant only on count II.  The court imposed a 29-year extended-term sentence due to defendant's prior Kentucky convictions.  The trial court denied defendant's motion to reconsider his sentence.  The trial court denied defendant's speedy trial motion.  Defendant appeals.  We affirm.

ANALYSIS

Defendant argues that he was denied his right to a speedy trial for multiple reasons, and that therefore he has the right to be discharged.  We disagree.  The Illinois speedy trial act provides an enforcement mechanism for violations of the constitutional right to a speedy trial.  725 ILCS 5/103-5(a) (West 1998) (Speedy Trial Act); 
People v. Healy
, 293 Ill. App. 3d 684, 689, 688 N.E.2d 786 (1997).  The statute provides:

   "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody 
unless delay is occasioned by the defendant
, by an examination for fitness ordered pursuant to Section 104-13 of this Act, by a fitness hearing, by an adjudication of unfitness to stand trial, by a continuance allowed pursuant to Section 114-4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal. ***

***

   (d) Every person not tried in accordance with *** this Section shall be discharged from custody ***."  (Emphasis added.)  725 ILCS 5/103-5 (West 1998).

The defendant bears the burden of proof on his motion for discharge.  
People v. Beyah
, 67 Ill. 2d 423, 427, 367 N.E.2d 1334 (1977).  In determining whether "delay is occasioned by the defendant", courts will consider the facts "'to prevent a "mockery of justice" either by technical evasion of the right to speedy trial by the State, or by a discharge of a defendant by a delay in fact caused by him.'"  
People v. Cunningham
, 77 Ill. App. 3d 949, 951, 396 N.E.2d 876 (1979), quoting 
People v. Fosdick
, 36 Ill. 2d 524, 529, 224 N.E.2d 242 (1967).  

A delay is "occasioned by" or attributable to defendant when his affirmative act causes or contributes to it.  
People v. Turner
, 128 Ill. 2d 540, 550, 539 N.E.2d 1196 (1989).  Defendant's silence or failure to object to a continuance requested by prosecution is not an affirmative act attributable to defendant.  
Healy
, 293 Ill. App. 3d at 690.  However, when defense counsel verbally indicates to the trial court that he is agreeable to a continuance, he causes or contributes to the delay and the defendant is bound by his counsel's actions.  
Turner
, 128 Ill. 2d at 553.  A delay prompted by the processing of a defendant's motions, including the time required for the State to respond and the time necessary to hear and decide the issues, is also attributable to the defendant.  
People v. Cooksey
, 309 Ill. App. 3d 839, 844-45, 723 N.E.2d 784 (1999). 

In the instant case, defendant was arraigned on October 18, 1996, and his trial did not commence until August 12, 1998.   During oral argument, defense counsel focused on the following five occasions for which the State admitted responsibility in its brief:  

(1) September 14, 1996, to October 18, 1996 (34 days); 

(2) October 18, 1996, to October 30, 1996 (12 days); 

(3) February 3, 1998, to February 24, 1998 (21 days);

(4) March 26, 1998, to April 16, 1998 (21 days); and

(5) July 6, 1998, to August 11, 1998 (36 days)
(footnote: 1). 

In the trial court, defense counsel made a posttrial motion claiming denial of defendant's speedy trial rights.  The trial court denied the posttrial motion.  However, no specific calculations were made in the trial court.  On appeal, neither the State nor the defense counsel made a thorough factual presentation during oral argument on the speedy trial issue.  Since the State admitted responsibility for continuances amounting to 124 days during oral argument, defendant contends that he must be discharged.  Defendant has presented extensive argument contending that this court is bound by the State's admission at oral argument and cannot review the record 
de novo
.  We disagree. See 
People v. Kliner
, 185 Ill. 2d 81, 116, 705 N.E.2d 850 (1998) (reviewing court is not bound by trial court's acceptance of State's erroneous concession to a 34-day delay, where the record established continuance by agreement for the period in question). 

The record reveals that the State was responsible for items (1), (3), (4), and (5) noted above.  The State was properly charged with item (1), which represented the time from defendant's arrest to arraignment.  Similarly, the State was responsible for items (3) through (5) when it sought continuances to argue its motion to introduce evidence of other crimes. 

However, we conclude that the State was not chargeable for item (2), a delay of 12 days from October 18, 1996, to October 30, 1996.  The record indicates that defendant was arraigned on October 18 and the court appointed Mr. Scarnavack as public defender at this time.  The court also ascertained defendant's medical needs at this point due to a prior injury.  On October 18, 1996, the transcript reveals that the following statements were made:

  "THE COURT: Your attorney will speak to you about medical needs and take care of those as best as we can.  Okay?  The next court date?

  MR. SCARNAVACK: How about the 20th
 of November?

  THE COURT: Let's pick a much shorter.  I am concern[ed] about his physical condition.

  MR. SCARNAVACK: The 6th
 of November?

  THE COURT: The 30th
 you will be back here at this time."

The State was not involved in the discussion concerning the next court date, October 30, 1996.  It is unclear why the State admitted responsibility for this segment of time.  However, we cannot predicate our decision on either admissions or calculations by a party that a review of the record establishes to be clearly erroneous.  See 
Cunningham
, 77 Ill. App. 3d at 951-52 (court was not bound by State's miscalculation of the expiration of the speedy trial term); 
Kliner
, 185 Ill. 2d at 116.  Tallying items (1), (3), (4) and (5), we calculate that the State was responsible for a delay of only 112 days.

---- THE FOLLOWING TEXT IS UNPUBLISHED MATERIAL ----    

Defendant also argues that he is not chargeable for the period between October 30, 1996, to May 19, 1997, because continuances were granted so that the State could respond to defendant's discovery request.  Generally, a defendant is charged with the time naturally associated with processing a defense motion, including the time necessary for the State to respond to discovery motions.  
People v. Vasquez
, 311 Ill. App. 3d 291, 295, 724 N.E.2d 984 (2000).  However, a discovery motion that should cause little or no delay cannot be used as an excuse to delay trial.  
Vasquez
, 311 Ill. App. 3d at 295.

In the instant case, defendant argues that the period from October 30, 1996, to May 19, 1997, should be attributed to the State for delayed response to discovery.
  However, nothing in the record indicates that the State delayed in responding to discovery.  On October 30, 1996, defense counsel asked leave of court to file a motion for discovery and the case was continued to December 5, 1996.  On December 5, 1996, defense counsel requested more time to look at the pretrial investigation report and the case was continued to January 16, 1997.  On January 16, 1997, defense counsel suggested that the case be continued to February 27, 1997.  On February 27, 1997, the case was continued by agreement to April 8, 1997.  On April 8, the State indicated that defendant made additional requests for discovery which the State "may not be able to get."  Specifically, defendant requested reports from Abilene, Texas where the defendant was arrested and extradited.  When defendant stated that he could not file an answer until the he received the reports, the court suggested that defendant directly subpoena authorities in Texas for the records.   The case was then continued for discovery until May 19, 1997.  In our view, the State is not chargeable for the period in question.

Defendant cites 
People v. Vasquez
, 311 Ill. App. 3d 291, 724 N.E.2d 984 (2000).  In 
Vasquez
, the defendant moved to compel the State to respond to discovery.  The trial court set a deadline for compliance by August 4, 1997, and also scheduled a final pretrial conference for October 24.  On August 4, the State assured defense counsel that it would comply with discovery "within the next few days."  
Vasquez
, 311 Ill. App. 3d at 292.  On October 10, defendant filed a second motion to compel discovery.  On October 17, when the State still had not complied with discovery, defense counsel suggested that the case be continued to the final pretrial date of October 24, 1997.  By October 24, 1997, the State still had not complied with discovery.  
Vasquez
, 311 Ill. App. 3d at 293.

On review, the court held that the time from August 4, 1997, to October 24, 1997, was attributable to the State.  
The court emphasized that the State originally estimated that the documents could be produced "in a few days" and attempted to tender them over three months later.  The court found that defendant's discovery motion should have caused little or no delay and, therefore, the lapse in time could not be charged to defendant.  
Vasquez
, 311 Ill. App. 3d at 295.

The instant case is factually distinguishable from 
Vasquez
.  Unlike the State in 
Vasquez
, the State here did not promise the Texas reports in a few days and even explained that it "may not be able to get" them at all.  In 
Vasquez
, the defendant moved to compel the State to answer discovery and the State failed to comply with the court's deadlines.  Here, in contrast, defendant filed no motions to compel discovery and the trial court even suggested alternative methods to secure the Texas reports, implying that it was reasonable that the State was unable to produce such documents.  Thus, defendant's request for the Texas reports could not be classified as one that "would cause little or no delay" under 
Vasquez
.

Defendant also argues that he should not be responsible for the period in question because he was prevented from entering the courtroom due to the size of his wheelchair.  When the trial court asked whether counsel was waiving defendant's presence, defense counsel indicated on December 5, 1997, that he had spoken to defendant and was proceeding accordingly.  We note that on April 8, 1997, court was convened in the hallway in defendant's presence.  Defense counsel was granted a continuance for discovery in defendant's presence without any objection by defendant.  As for the other dates in question, the record need not always show that when an attorney requests or agrees to a continuance, he has consulted with and received the advice of the accused, because such a rule would intolerably burden the trial courts.  
People v. Bowman
, 138 Ill. 2d 131, 142, 561, N.E.2d 633 (1990).  In our view, the State was not responsible for delay occurring from October 30, 1997, to May 19, 1997. 

Defendant also asserts that a continuance granted on August 13, 1997, to continue the case to September 9, 1997, should be attributed to the State because the State initiated the request for continuance due to the State's attorney's vacation.  However, during the motion, defense counsel expressly agreed to the continuance and indicated that additional time was necessary to complete discovery and file an answer.  Defense counsel even suggested the September 9th
 date to the court.  We hold that this delay also tolled the 120-day speedy trial period because defense counsel verbally agreed to the continuance and was unprepared to go to trial at an earlier date.  
Cooksey
, 309 Ill. App. 3d at 845.   

Finally, defendant argues that he had been attempting to discharge his counsel from May 1997 to January 12, 1998, when a supervising assistant public defender appeared on behalf of defendant.  Defendant claims that he should not be held responsible for delays due to his counsel's requests for continuances during this period of time.  The record indicates that the trial court denied defendant's 
pro se
 requests to dismiss counsel and stated that defendant could not proceed 
pro se
 while simultaneously exercising his right to counsel.  See 
People v. Moore
, 189 Ill. 2d 521, 534, 727 N.E.2d 348 (2000) (defendant has no right to both self-representation and the assistance of counsel).

On September 9, 1997, defense counsel indicated that defendant refused to cooperate with him and that defendant had filed a lawsuit against him and the Public Defender's office.  Defendant had also filed a complaint against his counsel with the ARDC.  The court refused to allow defense counsel to withdraw, however, because defendant's only allegation against his counsel was that counsel did not aid defendant in a separate civil action.  In our view, the responsibility for these delays does not rest with the State.  See 
Bowman
, 138 Ill. 2d at 146 (defense counsel's withdrawal and replacement counsel's request for continuance was attributed to defendant, because defendant substantially contributed to the reason for the motion to continue in the first place). 

---- THE FOREGOING TEXT IS UNPUBLISHED MATERIAL ---- 

Next, defendant contends that the trial court abused its discretion in ruling that the State could introduce evidence of defendant's prior crimes in rebuttal to show intent if defendant chose to testify and his intent was at issue.  Defendant further contends that the other crimes were not similar to the charged offense.

Generally, evidence of other crimes is inadmissible to establish the defendant's propensity to commit crime.  
People v. McKibbins
, 96 Ill. 2d 176, 182, 449 N.E.2d 821 (1983).  Evidence of other crimes is admissible, however, when such evidence is relevant to prove 
modus operandi
, intent, identity, motive, or absence of mistake.  
McKibbins
, 96 Ill. 2d at 182.  In establishing a common design or plan, a high degree of similarity between the other crime and the charged offense must be present because the other offense is being offered to prove defendant's involvement in the charged offense.  
People v. Jones
, 215 Ill. App. 3d 903, 911, 576 N.E.2d 162 (1991).  Where "other crimes" evidence is being presented to show intent, however, "mere general areas of similarity will suffice."  
McKibbins
, 96 Ill. 2d at 186.  Finally, it is within the sound discretion of the trial court to determine whether evidence of other crimes is relevant to a material issue in the case.  
People v. Charles
, 238 Ill. App. 3d 752, 760-61, 606 N.E.2d 603 (1992). 

In the instant case, the court ruled that the State could introduce evidence of defendant's two prior convictions in Kentucky to show intent by way of impeachment should the defendant elect to testify.  Both crimes occurred on the same night and eight years before defendant's attack on M.K.  In the first conviction, defendant lured P.L. to his apartment by falsely saying that he had a sick baby that needed help.  Once inside his apartment, defendant beat P.L. in the face and told her to remove her clothes and that, if she screamed, he would kill her.  Defendant tackled P.L to the ground and called P.L. "bitches" before sexually assaulting her.  In the second conviction, defendant forced C.V.'s door open under the pretense of using the telephone.  He strangled C.V., ripped open her robe and beat her face with his fists.  Defendant brandished a fork and said that C.V. was in for a night of "fucking and sucking."  Defendant told C.V. that, if she screamed, he would kill her and dragged her into the apartment's hallway.  C.V. fell to the floor and defendant tried to stab her in the throat with the fork.  Defendant fled when the next-door neighbor's door opened and someone pulled C.V. inside.

In our view, there are general similarities between the other crimes and the attack on M.K.  Defendant beat all three victims in the face, called them vulgar names, tackled them to the ground, told them they would be killed or raped and the victims were disrobed.  Defendant argues that there are several distinctions between the prior crimes and the charged offense because the profanity differed, a weapon was not used in the instant case, defendant actually had sexual intercourse with P.L., and defendant was M.K.'s houseguest.  However, the other crimes need not be identical to the charged offense before such evidence is admissible; there will always be dissimilarities between independent crimes.  
People v. Taylor
, 101 Ill. 2d 508, 521, 463 N.E.2d 705 (1984).  Moreover, like C.V., M.K.'s attack was interrupted by the appearance of a neighbor who pulled M.K. to safety.

Defendant's reliance on 
People v. Friedman
, 79 Ill. 2d 341, 403 N.E.2d 229 (1980), is also misplaced.  In 
Friedman
, defendant was charged with theft by deception for establishing "marketing corporations" and inducing participation of unsophisticated investors in these enterprises.  
Friedman
, 79 Ill. 2d at 344.  The court held that evidence of defendant's prior crimes for mail fraud and setting up "front" businesses to make "quick money" were inadmissible.  The court explained that there was no evidence of underlying facts of these prior convictions and, therefore, the court could not assess whether the prior offenses were substantially similar to the charged offense.   
Friedman
, 79 Ill. 2d at 354-55.  In contrast, in the instant case, the record contained specific facts of defendant's prior convictions which allowed the court to determine that the other crimes were similar to the charged crime.

Defendant also contends that the court imposed an evidentiary penalty upon him by allowing evidence of his prior crimes if he elected to testify.  The court in 
McKibbins
 rejected a similar argument when it allowed evidence of defendant's misdemeanor theft convictions to impeach defendant if he chose to testify in his trial for armed robbery and murder.  In the words of the court:

"Defendant can have no expectation that evidence of this nature will not be introduced simply because it is detrimental to his cause. 

   *** A trial is an adversary proceeding.  The State had the right and the obligation to use all of the impeaching evidence it possessed in order to destroy the credibility of the defendant if he were to testify."  
McKibbins
, 96 Ill. 2d at 189.

In the instant case, the court explicitly weighed the probative value of the other crimes evidence against its prejudicial effect.  The court also rejected the use of other crimes evidence to prove 
modus operandi
 because the facts were not similar enough.  In our view, the trial court did not abuse its discretion concerning the admissibility of defendant's prior crimes to show intent.      

Defendant further argues that the State did not prove that defendant committed attempted aggravated criminal sexual assault beyond a reasonable doubt.  Specifically, defendant argues that his acts did not constitute a substantial step toward commission of "an act of sexual penetration" as required by the criminal sexual assault statute.  720 ILCS 5/12-13(a)(1) (West 1998).  In support, defendant contends that both he and the victim remained clothed from the waist down and there was no evidence that defendant touched or attempted to touch victim's genitalia.  We disagree.

---- THE FOLLOWING TEXT IS UNPUBLISHED MATERIAL ---- 

The standard for reviewing the sufficiency of the evidence in a criminal case, including a sex-offense case, is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Schott
, 145 Ill. 2d 188, 202-03, 582 N.E.2d 690 (1991).  Reversal is required where the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  
People v. Collins
, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985).  

Defendant's convictions on counts II and III are based upon the definitions of aggravated criminal sexual assault set forth in section 12-14(a)(2) and (3) of the Criminal Code:

  "(a) The accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during *** the commission of the offense:

***

   (2) the accused caused bodily harm *** to the victim; or

   (3) the accused acted in such a manner as to threaten or endanger the life of the victim".  720 ILCS 5/12-14(a)(2) and (3) (West 1998).

Section 12-13(a)(1) further defines criminal sexual assault:

   "(a) The accused commits criminal sexual assault if he or she:

    (1) commits an act of sexual penetration by the use of force or threat of force".  720 ILCS 5/12-13(a)(1) (West 1998).

Additionally, "[a] person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."  720 ILCS 5/8-4(a) (West 1998).  What constitutes a "substantial step" is determined by the facts and circumstances of each particular case.  
People v. Smith
, 148 Ill. 2d 454, 459, 593 N.E.2d 533 (1992).  Although mere preparation is not enough, the accused need not have completed the last proximate act to actual commission of a crime.  
People v. Hawkins
, 311 Ill. App. 3d 418, 423, 723 N.E.2d 1222 (2000).  A substantial step puts the accused in a "dangerous proximity to success."  
People v. Morissette
, 225 Ill. App. 3d 1044, 1046, 589 N.E.2d 144 (1992).  An attempt crime is complete upon the completion of a substantial step with the requisite intent, and subsequent abandonment of the criminal purpose is no defense.  
Hawkins
, 311 Ill. App. 3d at 424, citing 
People v. Myers
, 85 Ill. 2d 281, 290, 426 N.E.2d 535 (1981).

---- THE FOREGOING TEXT IS UNPUBLISHED MATERIAL ---- 

Defendant relies upon 
People v. Montefolka
, 287 Ill. App. 3d 199, 678 N.E.2d 1049 (1997).  In 
Montefolka
 the victim, wearing only a nightshirt and underwear, awoke in her upstairs bedroom and found defendant in her home downstairs.  Defendant told the victim that he did not think she was home and would not hurt her if she did not try anything.  Nevertheless, the victim ran screaming to the front door.  Defendant caught the victim, threw her on the floor and a struggle ensued as defendant choked the victim.  During the struggle, defendant twice told the victim to take off her underwear but she refused.  Eventually, the victim was able to calm defendant down by offering money.  Defendant took the money and left.  
Montefolka
, 287 Ill. App. 3d at 202.

On review, the court reversed defendant's conviction for attempted aggravated criminal sexual assault because the defendant's actions did not constitute a substantial step toward commission of the offense.  The court focused on the fact that defendant made no overt act toward victim's genitals, did not use force to remove her clothing, nor did he expose himself.  The court indicated that the only overtly sexual aspects of defendant's conduct were his two requests that victim remove her underwear.  Although the court found defendant's conduct "reprehensible," it concluded that defendant's actions did not constitute a substantial step toward the commission of aggravated criminal sexual assault.  
Montefolka
, 287 Ill. App. 3d at 209.  

Montefolka
 is factually distinguishable from the instant case.  Unlike the victim in 
Montefolka
, M.K. specifically testified that defendant told her that he was going to rape her and kill her.  M.K.'s neighbor Jeffrey Ray testified that he heard M.K. scream "I am not going to let you rape me."  While defendant in 
Montefolka
 merely requested victim to remove her underwear, defendant in the instant case ripped off M.K.'s blouse and bra.  M.K. also testified that defendant removed his shirt, unzipped his pants and took off his shoes.  Jeffrey Ray corroborated M.K.'s testimony that defendant appeared shirtless in M.K.'s doorway.  Physical evidence also corroborated M.K.'s testimony (ripped blouse and bra and defendant's shirt and shoes left behind in M.K.'s apartment).  Moreover, defendant here was interrupted during the commission of the offense by a neighbor's knock.  In contrast, the victim in 
Montefolka
 calmed the defendant and was able to escort him out after paying him money.

We find the State's case, 
People v. Hawkins
, 311 Ill. App. 3d 418, 723 N.E.2d 1222 (2000), instructive.  In 
Hawkins
, defendant broke into the victim’s house, sat on her bed, took off his shoes and started to get under the covers when victim asked what was "going on."  311 Ill. App. 3d at 422. Defendant put his arm on her shoulder and said "what’s the matter baby, I came to kick it with you."  311 Ill. App. 3d at 422.  The victim sprang out of bed, turned the lights on, asked defendant who he was and eventually screamed.  Defendant left the house shortly after.  The court held that defendant’s acts were not only corroborative of his intent to commit a sexual assault, but brought him within a "dangerous proximity of success" as well.  311 Ill. App. 3d at 427.  The court was unpersuaded by defendant’s argument that he did not take any of his clothes off, he did not fondle the victim’s genitals or breasts, did not behave aggressively toward victim, and did not demand that she remove her clothes or engage in sexual contact.  
Hawkins
, 311 Ill. App. 3d at 426-28.

Hawkins
 further criticized 
Montefolka
 by disagreeing with the court’s conclusion as well as its reasoning.  
Hawkins
 found 
Montefolka
’s emphasis on what defendant did 
not
 do to be an inappropriate test for determining whether a substantial step was taken.  To support its view, 
Hawkins
 relied on the Model Penal Code’s emphasis on the nature of the steps taken, rather than on what remains to be done to commit an attempt crime.  See Model Penal Code § 5.01, Comment 6(a), at 329 (1985) ("[t]hat further major steps must be taken before the crime can be completed does not preclude a finding that the steps already taken are substantial"). 

We also note that in 
People v. Cosby
, 305 Ill. App. 3d 211, 711 N.E.2d 1174 (1999), this court expressly declined to follow 
Montefolka
 because the authority upon which 
Montefolka
 relied was based on the old standard of review for sex offense convictions:  convictions were upheld in the past only if the victim’s testimony was "clear and convincing or substantially corroborated."  
Cosby
, 305 Ill. App. 3d at 222.  See also 
People v. Scott
, 318 Ill. App. 3d 46, 54, 740 N.E.2d 1201 (2000) (predatory criminal sexual assault case relying on 
Hawkins
 to conclude that 
Montefolka
 "may not be good law").   

Defendant further posits that his conviction under count III for attempted aggravated criminal sexual assault, requiring the accused to "threaten or endanger the life of the victim," was inconsistent with his acquittal for attempted first-degree murder and should be vacated.  720 ILCS 5/12-14(a)(3) (West 1998).  The record reveals that the trial court only sentenced defendant on count II (attempted aggravated criminal sexual assault for bodily harm to M.K.) and did not sentence defendant on count III.  There is no final judgment in a criminal case until the imposition of a sentence, and, in the absence of a final judgment, an appeal cannot be entertained.  
People v. Campbell
, 241 Ill. App. 3d 782, 789, 609 N.E.2d 704 (1992).  Since no sentence was imposed on count III, there can be no appeal of defendant's convictions on this count.

Moreover, even if sentence were imposed on count III, defendant's reliance on 
People v. Klingenberg
, 172 Ill. 2d 270, 665 N.E.2d 1370 (1996), is misplaced.  In 
Klingenberg
 the court found a logical inconsistency between defendant's conviction for the compound offense (official misconduct) and his acquittal for the predicate offense (theft).  The court explained that the jury could have convicted the defendant of official misconduct only if it believed that he committed theft.  
Klingenberg
, 172 Ill. 2d at 276-77.  

In the instant case, attempted murder required the State to prove beyond a reasonable doubt that the defendant, with the specific intent to commit murder, performed any act that constituted a substantial step toward the commission of murder.  
People v. Allen
, 153 Ill. 2d 145, 154, 606 N.E.2d 1149 (1992).  Here, unlike 
Klingenberg
, attempted aggravated criminal sexual assault, based on defendant's actions to "threaten or endanger the life of the victim" (720 ILCS 5/12-14(a)(3) (West 1998)), is not a lesser included offense of attempted first-degree murder.  In the instant case, the trial court found that the defendant's specific intent throughout the assault was to obtain sex from the defendant, and not to commit murder. 

Defendant alleges that four sentencing errors entitle him to a new sentencing hearing.  First, defendant contends that his extended term sentence was based on an unconstitutional statute under 
Apprendi v. New Jersey
, 530 U.S. ___, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  
Apprendi
 held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63,.  

Under Illinois law, conviction for attempted aggravated criminal sexual assault, a Class 1 felony, carries a penalty ranging from 4 to 15 years of imprisonment. 730 ILCS 5/5-8-1(a)(4) (West 1998).  Section 5-8-2 of the Unified Code of Corrections allows the court to impose an extended term as follows:

   "(a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5-8-1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5-5-3.2 were found to be present.  Where the judge finds that such factors were present, he may sentence an offender to the following:

***

   (3) for a Class 1 felony, a term shall not be less than 15 years and not more than 30 years."  730 ILCS 5/5-8-2(a)(3) (West 1998).

Section 5-5-3.2(b)(1) recognizes an offender's prior crimes as an aggravating factor that justifies imposition of an extended term:

   "(b) The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 upon any offender:

   (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts".  730 ILCS 5/5-5-3.2(b)(1) (West 1998).

In the instant case, the court imposed an extended-term sentence upon defendant based on his prior convictions.  Defendant argues that he was entitled to a trial by jury to prove the fact of his prior convictions beyond a reasonable doubt.  We disagree.  In its discussion of 
Almendarez-Torres v. United States
, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), 
Apprendi
 recognized that prior convictions are an exception to the general rule that facts which increase a sentence beyond the statutory maximum must be proven to a jury beyond a reasonable doubt.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 453-55, 120 S. Ct. at 2361-63.  See also 
People v. Lathon
, 317 Ill. App. 3d 573, 740 N.E.2d 377 (2000) (defendant's sentencing as a recidivist was not subject to 
Apprendi
 rule generally requiring a jury determination of fact issues relating to sentencing).  
Apprendi
 explained that the procedural safeguards attached to any "fact" of a prior conviction mitigate the due process concerns otherwise implicated in allowing a judge to determine a "fact" which increases punishment beyond the maximum statutory penalty.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362.  In our view, 
Apprendi
 does not render recidivist provisions unconstitutional.

Second, defendant argues that the trial court erred by subjecting defendant’s sentence to an impermissible double enhancement.  Specifically, defendant claims that the trial court used his prior convictions to both qualify defendant for an extended term and also to sentence him to a term of imprisonment nearly double the maximum of the unextended term.  We disagree. 

"Double enhancement occurs when a factor already used to enhance an offense or penalty is reused to subject a defendant to a further enhanced offense or penalty."  
People v. Thomas
, 171 Ill. 2d 207, 223, 664 N.E.2d 76 (1996).  For example, the same factor, such as prior convictions, has been used to enhance an offense and to impose a higher sentence.  
People v. Hobbs
, 86 Ill. 2d 242, 427 N.E.2d (1981) (misdemeanor theft enhanced to felony theft and extended-term sentence imposed based on same prior conviction).  

In 
Thomas
, the trial court used defendant's prior convictions to: (1) classify him as a Class X felon; and (2) consider those convictions as aggravating factors when determining defendant’s sentence.  On review, the court held that while the first use of defendant's prior convictions certainly enhanced defendant's sentence, the trial court's "second use" of defendant's prior convictions did not constitute enhancement
 because:

"[T]he discretionary act of a sentencing court in fashioning a particular sentence tailored to the needs of society and the defendant, within the available parameters, is a requisite part of every individualized sentencing determination."  
Thomas
, 171 Ill. 2d at 224-25.

In the instant case, after extending defendant’s sentence, the trial court referred to defendant’s prior crimes and low rehabilitative potential as a basis for determining the length of sentence.  The trial court’s "second use" of the prior crimes did not constitute an enhancement, however, because like 
Thomas
, the court was simply exercising its judicial discretion in fashioning an appropriate sentence within the framework provided by the legislature.

Third, defendant asserts that he was denied a fair sentencing hearing because the trial judge relied on facts not in evidence and improperly injected his own personal beliefs into the process.  In fashioning a sentence, a trial judge’s reliance on his personal beliefs or arbitrary reasons, rather than authorized factors, warrants remandment for resentencing.  
People v. Bolyard
, 61 Ill. 2d 583, 586-87, 338 N.E.2d 168 (1975).  However, reliance on an improper factor does not always necessitate remandment for resentencing.  
People v. Bourke
, 96 Ill. 2d 327, 332, 449 N.E.2d 1338 (1983).  Remandment is not required when it can be determined from the record that the weight placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence.  
Bourke
, 96 Ill. 2d at 332.  When determining whether a sentence was improperly imposed, the reviewing court should not focus on the trial court’s isolated statements.  Rather, this court should consider the entire record as a whole.  
People v. Ward
, 113 Ill. 2d 516, 526-27, 499 N.E.2d 422 (1986).

Defendant argues that the judge improperly relied on his personal experience when he stated:

"I mean, threatening sexual conduct of an aggressive nature.  Through many years of experience, the gravaman is not sexual gratification.  It’s hatred for women."

Standing alone, this comment appears to generalize defendant’s behavior based on the judge’s personal experience.  However, the judge further commented:

"[F]or the protection of society, there’s no question in my mind that his segregation from society is necessary, from any society containing women.  He feels very angry toward women.  He attacks them repeatedly, and takes advantage of them, lures them into situations where they let their guard down, uses his own social status as being -- trying to appear as a normal married person with children, and he uses that as an entrance to get past the locks of a person’s door or to attack them or get into a person’s apartment, lure them in so he can sexually assault them.  There’s a mixture of desire for sexual gratification and absolute hatred, contempt, and danger to all women."

These subsequent remarks make it clear that the judge was not simply relying on personal knowledge concerning sex offenders, but was assessing the defendant’s mentality and habits based on defendant’s criminal history with women.  See 
People v. Chapman
, 262 Ill. App. 3d 439, 462, 633 N.E.2d 718 (1992) (relevant sentencing factors include defendant’s age, demeanor, mentality, habits and general moral character).

Defendant also alleges that the judge improperly relied on an unnamed study not in evidence when he assessed defendant’s rehabilitation potential:

"So the likelihood of rehabilitation is very low, and in all likelihood, when the defendant is released from custody, he may well commit the offense again.  That’s what the studies show.  I’m not making that up.  I’m not guessing.  It’s based on what I read.  Scientific studies over an extended period in Massachusetts."

We note that this remark was made subsequent to the judge’s observation that "[d]espite the ten-year sentence in the Kentucky prison, [defendant’s] words come out exactly the same, and the actions come out exactly the same.  So there’s been no rehabilitation from the first prison term."  While we do not consider it proper to make references to studies not in evidence, the error was harmless because the judge’s conclusion concerning rehabilitation potential had an independent factual basis in the record.  

Defendant also claims that the judge committed error when he expressed disappointment that the extended term was not longer.  Defendant relies on 
People v. Gonzalez
, 238 Ill. App. 3d 303, 606 N.E.2d 304 (1992), for support.  In 
Gonzalez
, the trial court improperly relied on a biased personal attitude toward sentencing in murder cases involving street gang conflict.  The court emphasized the stupidity and cowardice of street gang rivalry throughout Chicago and commented that "many believe" the maximum term of 40 years was inadequate.  
Gonzalez
, 238 Ill. App. 3d at 333.  Like 
Gonzalez
, the court in the instant case also commented that the maximum sentence was inadequate.  However, unlike 
Gonzalez
, the trial court’s concern here focused on the particular facts relating to defendant’s low rehabilitation potential, and not a biased personal attitude toward sentencing in all sex-offense cases.  In our view, the weight placed on any improperly considered factor was so insignificant that it did not lead to a greater sentence. 

Additionally, defendant argues that imposition of an extended-term 29-year sentence was excessive.  When the sentence chosen by the trial court falls within the statutory range permissible for the pertinent criminal offense for which the defendant has been convicted, the sentence will not be disturbed absent an abuse of discretion.  
People v. Jones
, 168 Ill. 2d 367, 373-74, 659 N.E.2d 1306 (1995).  Also, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed aggravation and mitigation factors differently.  
People v. Streit
, 142 Ill. 2d 13, 19, 566 N.E.2d 1351 (1991).

Defendant further posits that the trial court erred by failing to consider that defendant was wheelchair bound and unlikely to commit this crime in the future.  During sentencing, the prosecutor asserted that defendant may have reaggravated a prior injury, but there was no testimony or evidence in the record that defendant was permanently confined to a wheelchair.  The trial court did consider defendant's injury and commented:

  "The Court is required under the Illinois Constitution to consider potential rehabilitation, and it certainly diminished from the time of his first offense, and it's even less now.  Because he's still doing the same thing.

  The fact that a person has suffered physical injury that could, perhaps, prevent him from committing the exact same type of offense, there's no way it will prevent him from committing other types of serious offenses against women."

The court emphasized that defendant's imprisonment for the Kentucky convictions did not appear to deter defendant from committing the same type of crime again.  In our view, the court considered appropriate factors when sentencing defendant and did not abuse its discretion.

Defendant also argues that counsel was ineffective for failing to file a motion to dismiss due to alleged speedy trial violations, failing to request a substitute judge and for filing an untimely motion for a new trial.  
Under 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984), a claim of ineffective assistance of counsel will prevail if: (1) counsel's performance was deficient or fell below an objective standard of reasonableness; and (2) defendant has suffered prejudice thereby.  If the ineffective assistance claim can be disposed of on the ground that defendant did not suffer prejudice, then a court need not decide whether counsel’s performance was deficient.  
People v. Evans
, 186 Ill. 2d 83, 94, 708 N.E.2d 1158 (1999).  Since our review already indicates that defendant’s speedy trial claim would not have prevailed, defendant fails to demonstrate any prejudice on this issue.  

---- THE FOLLOWING TEXT IS UNPUBLISHED MATERIAL ----

There is also no evidence that defense counsel’s failure to request a substitute judge amounted to ineffective assistance.  The record reveals no personal animosity, hostility or ill-will exhibited by the judge toward the defendant.  
People v. Hooper
, 133 Ill. 2d 469, 513, 552 N.E.2d 684 (1989).  Defendant merely alleged a three-way conspiracy between the trial judge, prosecution and defense counsel without any factual basis for support.  

---- THE FOREGOING TEXT IS UNPUBLISHED MATERIAL ----

Finally, defendant contends that he was denied effective assistance where defense counsel had a conflict of interest due to defendant filing ARDC complaints and lawsuits against defense counsel.  However, a lawsuit or ARDC claim against a defendant’s attorney does not create a 
per se
 conflict, and it is the defendant’s responsibility to provide the court with legitimate reasons supporting his request for new counsel.  
People v. Massa
, 271 Ill. App. 3d 75, 82-83, 648 N.E.2d 123 (1995).  Furthermore, the trial judge is vested with discretion to conclude that a defendant’s pursuit of an otherwise legal right is frivolous and merely an attempt to impede or delay the administration of justice.  
People v. Cordevant
, 297 Ill. App. 3d 193, 198-99, 696 N.E.2d 1233 (1998), citing 
People v. Barrow
, 133 Ill. 2d 226, 252, 549 N.E.2d 240 (1989).  

In the instant case, the trial court determined defendant’s allegations against his counsel to be unfounded and declined to allow the public defender to withdraw on the basis of defendant’s complaint, which alleged that defense counsel would not aid him with his civil suit.  The court addressed defense counsel's motion to withdraw as follows:

"[T]hese are all actions by defendant that if I allowed him to take credence would allow the defendant to forum shop for attorneys by filing complaints about the attorneys.  Filing lawsuits against their own attorneys is *** [to] allow obstruction of justice when an otherwise competent lawyer could prepare the case, those are not bases for withdrawal, counsel."

We hold that the trial court did not abuse its discretion in refusing to allow counsel to withdraw.  

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

CAHILL, P.J. and McBRIDE, J., concur.

FOOTNOTES
1:
The State conceded during oral argument that, in its brief, it erroneously calculated the fifth period as 26 days rather than 36 days.  This obvious mistake increased the total amount of days calculated from 114 to 124 days.