2020 IL App (2d) 170673-U
No. 2-17-0673
Order filed June 1, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) )  ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CF-409 |
| QUINTIN D. MULLEN, | ) ) | Honorable Robert K. Villa |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in summarily dismissing defendant's postconviction petition alleging ineffectiveness of trial counsel and appellate counsel: the record and the affidavits in support of the petition refuted claims that counsel was ineffective for (1) failing to pursue an alibi defense, (2) preventing defendant from testifying, (3) coercing defendant into waiving a jury trial, (4) failing to preserve a challenge to an order limiting cross-examination of a prosecution witness, and (5) failing to move for dismissal based on a violation of his speedy trial rights.

¶ 2    Defendant, Quintin D. Mullen, appeals from the first-stage dismissal of his petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)), contending that six of the claims in his petition present arguable claims of constitutional magnitude such that

dismissal at the first stage was improper. We hold that defendant failed to state the gist of a constitutional claim as to all six of those claims, and we therefore affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Following a bench trial, defendant was found guilty of armed violence predicated on accountability for the death of a companion animal (720 ILCS 5/33A-2(a) (West 2012), 510 ILCS 70/3.02(a) (West 2012)), home invasion (720 ILCS 5/19-6(a)(3) (West 2012)), and armed robbery (720 ILCS 5/18-2(a)(2) (West 2012)). At trial, the victims, Thodhoraq Zguri and Sabrina Saranella, identified defendant as one of two people who, around 1:00 p.m. on March 1, 2013, forced their way into the North Aurora duplex where Zguri lived and Saranella stayed part-time. Defendant removed a safe from Zguri's upstairs bedroom while the other intruder threatened Zguri and Saranella and shot one of their dogs. Before leaving, the other intruder threatened to return and shoot Zguri and Saranella if they told anyone "who had done this or who they were." Zguri told Saranella to call 911, but to report that someone had entered the residence while they were out. While the two were waiting for the police to arrive, Zguri attempted to conceal two bags of marijuana, which he knew weighed a bit more than a total of 50 grams, behind a water heater.

¶ 5     Defendant was an associate of Zguri's and known to Zguri and Saranella as "Q" or "Q-tip." Defendant had seen Zguri's safe and knew where Zguri kept it and other possessions. Zguri occasionally sold defendant marijuana, and sometimes illegally bought the credit on defendant's Link ("food stamp") card. Saranella did not intentionally associate with defendant and admitted that she had never liked him.

¶ 6     Both Zguri and Saranella admitted that they had lied to the police about the circumstances of the robbery. The deception started when Saranella told the 911 operator a confusing story about an intrusion that occurred while the two were on a trip to a 7-Eleven. The two also spoke to police

officers at the residence and at a veterinary clinic to which they had taken their injured dog; they persisted in saying that they had not been present during the intrusion. Zguri testified that he was afraid to identify defendant because of the other intruder's threats, but that he changed his mind when their dog died at the veterinary clinic. He called the police to say that he wanted to speak with them when the two returned home from the clinic. However, as defendant pointed out, Zguri by then had discovered that his attempt to conceal his marijuana had been unsuccessful. Even after Zguri and Saranella identified defendant to the police, their descriptions of the events remained inconsistent.

¶ 7    There was no physical or circumstantial evidence of defendant's guilt. However, Corey Bachtell, Zguri's friend, partially corroborated the testimony of Zguri and Saranella. Bachtell had driven past Zguri's home and had seen two men running in the street. One of the men, whose appearance was consistent with defendant's, was carrying a box with dimensions consistent with Zguri's description of the safe. Bachtell testified that, as he drove by, he saw Zguri seem to wave him away. Zguri admitted that he saw Bachtell but claimed he failed to mention Bachtell's presence to the police because he did not think they would be interested in interviewing him. Defense counsel sought to ask Bachtell whether he knew that Zguri was a marijuana dealer, but the court sustained the State's objection. Because Bachtell agreed as the State was making its objection that he knew that Zguri sold drugs, the court declined to let counsel make an offer of proof.

¶ 8    The court found defendant guilty on all counts, concluding that Zguri and Saranella were credible despite their earlier deception:

"This is a case about credibility and not identity. *** This is a question about whether or not they lied about [defendant's] involvement in this case. Did they just decide

out of the blue, after 11 or 12 hours, to randomly select their friend as the fall guy to pin this on him? Why? It's incredible to think why, and there's nothing really to support this in the evidence that was presented to the Court.

***

*** The totality of the events that they experienced, I believe, prompted and explains the omissions and lies.

As far as their testimony, the Court considered [Zguri's] testimony to be very credible. He admitted his own inappropriate relationships with his girlfriend [who was underage when she started staying with him], his—certainly a lot of questionable actions of his and a lot of illegality. ***

*** All of this exposes him to criminal charges, even as we sit here today.

The defense suggests he did it to keep himself from being charged, that somehow or other this was going to keep him out of trouble with the police by giving them a name. Well, first of all, as has been pointed out by both counsel, I don't really think he's smart enough to have figured that out, and more importantly, there really isn't any evidence to support this."

¶ 9 On April 23, 2014, the trial court sentenced defendant to 23 years' imprisonment for his armed violence conviction and imposed shorter, concurrent sentences for the other two offenses.

¶ 10 Defendant appealed, arguing that the testimony of Zguri and Saranella was discredited to the extent that it could not support a conviction. We affirmed. *People v. Mullen*, 2016 IL App (2d) 140415-U. We recognized that, under J*ackson v. Virginia*, 443 U.S. 307, 319 (1979), as adopted by *People v. Collins*, 106 Ill.2d 237, 261 (1985), that "when a reviewing court decides a challenge to the sufficiency of the evidence, ' "the relevant question is whether, after viewing the evidence

in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *People v. Mullen*, 2016 IL App (2d) 140415-U, ¶ 16 (quoting *Collins*, 106 Ill. 2d at 261, quoting *Jackson*, 443 U.S. at 319). We held that, "despite the obvious issues associated with Zguri and Saranella as the sole identification witnesses, the record provides no basis for us to reject the court's conclusion that their testimony was credible." *People v. Mullen*, 2016 IL App (2d) 140415-U, ¶ 17. We noted that "the court plainly had given much thought to deciding the credibility of Zguri and Saranella's testimony," and that we could not "conclude that the results were unreasonable." *Mullen*, 2016 IL App (2d) 140415-U, ¶ 26.

¶ 11    On May 15, 2017, defendant filed a petition under the Act raising 10 claims, including the following 5 claims of ineffective assistance of trial counsel at issue in this appeal:

>    (1) Counsel unreasonably failed to call Porsha (or Porcha) Walton, whom defendant identified as an alibi witness;

>    (2) Counsel's unreasonable failure to develop defendant's alibi defense prevented him from exercising his right to testify in his own defense;

>    (3) Counsel "coerc[ed]" him into waiving his right to a jury trial by telling him that the additional preparation for a jury trial would result in a delay of at least 30 more days;

>    (4) Counsel unreasonably failed to preserve a claim that the trial court improperly limited defendant's opportunity to cross-examine Bachtell; and

>    (5) Counsel unreasonably failed to move for dismissal after the State violated his statutory right to a speedy trial. He noted that he had been in custody since his arrest and that 334 days had elapsed between his arrest and his trial, and he seemed to contend that none of the delay was attributable to him.

Defendant also asserted a sixth ineffectiveness claim: to the extent that these issues could have been raised on direct appeal, appellate counsel was ineffective for failing to do so.

¶ 12    Appended to the petition was defendant's affidavit, averring as follows:

> "[A.] That prior to trial I informed my attorney I were [*sic*] at my brothers [*sic*] house all morning and leading into the evening hours babysitting and that my brother's girl-friend, Porsha Walton can verify this fact;
>
> ***
>
> [B.] That my Attorney and I never set [*sic*] down once to discuss what my testimony would be ; [*sic*]
>
> [C.] That my Attorney refused to speak with *** Walton ; [*sic*]
>
> [D.] That the reason why I didn't testify is because [of counsel's failure to speak with Walton and defendant about their testimony] and that had I testified I would have [stated] that I were [*sic*] with *** Walton durig [*sic*] the early morning of March 1, 2013 and I ended up babysitting for [Walton] that morning leading up to the evenning [*sic*] hours which includes the time of the alleged home-invasion/robbery ; [*sic*]
>
> [E.] That I would have testified that I didn't commit the home-invasion/robbery I were [*sic*] accused of[.]"

¶ 13    Defendant also attached Walton's affidavit in which she averred that defendant had been babysitting for her on March 1, 2013:

> "I will testify that on March 1, 2013 [defendant] was at the house where [defendant's brother and I] lived [in Oswego] and that he was there that morning and through the afternoon and that I specifically recall this day because [defendant] babysat my children one of whom had a cold and I had to show [defendant] how to nurse the cold."

¶ 14    The court summarily dismissed the petition under section 122-2.1(a) of the Act (725 ILCS 5/122-2.1(a) (West 2016)), ruling, *inter alia*, that defendant had forfeited all his claims by failing to raise them on direct appeal. Defendant timely appealed.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, defendant asserts that the petition's five allegations of ineffective trial counsel and one allegation of ineffective appellate counsel present arguable claims of constitutional magnitude such that dismissal under section 122-2.1(a) was improper. The State argues that each of the claims fails on its merits. We agree with the State; we hold that defendant failed to state the gist of a constitutional claim as to all six of his claims. We therefore affirm.

¶ 17                    A. Standards Applicable to All Claims

¶ 18    At the first stage of the three possible stages of a postconviction proceeding, the circuit court reviews the petition without the participation of either party. Taking the allegations in the petition as true to the extent that they are not contradicted by the record, it determines whether the petition as a whole is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016); *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). A court should not dismiss a petition at the first stage if it "allege[s] enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act," that is, it states the " 'gist' " of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009), (quoting *People v. Porter*, 122 Ill. 2d 64, 74 (1988)). Further, first-stage dismissal is proper "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 12. A petition lacks the necessary basis when it is "based on an indisputably meritless legal theory or a fanciful factual allegation" such as "one which is completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16. That said, a circuit court may dismiss a petition at the first stage if its claims are procedurally defaulted. *People v. Kane*, 2013 IL App (2d) 110594, ¶ 26. If the

court does not dismiss the petition at the first stage, it must docket it for second-stage proceedings. 725 ILCS 5/122-2.1(b) (West 2016). It is only at the second stage that "the circuit court must determine whether the petition and any accompanying documentation make 'a substantial showing of a constitutional violation.' " *People v. Tate*, 2012 IL 112214, ¶ 10 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 19     Defendant claims that trial counsel and appellate counsel were ineffective.

"A claim that a defendant was denied his constitutional right to effective assistance of counsel is generally governed by the familiar two-pronged test established in *Strickland* [*v. Washington*], 466 U.S. 668 [(1984),]": "a defendant must establish that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance." *People v. Brown*, 2017 IL 121681, ¶ 25.

Counsel's performance is measured by "an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

"[Counsel's] strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-91.

"What investigation is reasonable depends on the informed strategic choices of, as well as the information supplied by, the defendant." *People v. Kokoraleis*, 159 Ill. 2d 325, 330 (1994). The duty to make reasonable investigations "involves the duty to independently investigate any possible defenses." *Kokoraleis*, 159 Ill. 2d at 329.

¶ 20    When a circuit court applies the *Strickland* standard to a postconviction petition at the first-stage review, it must use a "more lenient" form of the standard. *Tate*, 2012 IL 112214, ¶¶ 18-19. " '[A] petition alleging ineffective assistance may not be *** dismissed [at the first stage] if (i) it is *arguable* that counsel's performance fell below an objective standard of reasonableness and (ii) it is *arguable* that the defendant was prejudiced.' " (Emphases in original.) *Tate*, 2012 IL 112214, ¶ 19 (quoting *Hodges*, 234 Ill. 2d at 17). Under the arguability standard, it is "inappropriate" to require a petitioner to show at the first-stage that counsel's decisions were not a matter of sound trial strategy. *Tate*, 2012 IL 112214, ¶¶ 20-22. For instance, in *Tate*, the State argued that defense counsel could have strategically declined to call a witness who could offer exculpatory testimony because that testimony would have incidentally bolstered part of the testimony of one of the State's eyewitnesses. *Tate*, 2012 IL 112214, ¶ 21. The *Tate* court rejected such arguments as inappropriate at the first stage, where the petitioner need only show counsel's actions *arguably* fell below what is required under *Strickland.* See *Tate*, 2012 IL 112214, ¶ 24.

¶ 21    We conclude that each of defendant's claims fail even under this more lenient standard.

¶ 22                B. Ineffectiveness for Failure to Investigate or
                        Call Walton as an Alibi Witness

¶ 23    Defendant first contends that he stated an arguable postconviction claim that trial counsel was ineffective for failing to investigate and call Walton as an alibi witness. He asserts that "Walton's [proposed] testimony that [defendant] was at her house taking care of her sick child, taken as true, would have conclusively established that [defendant] was not at Zguri's apartment

during the robbery," and that trial counsel's failure to investigate Walton and to call her as a witness was thus arguably unreasonable and prejudicial. The flaw in this claim is that the affidavits do not establish that Walton could have testified to defendant's whereabouts during the robbery; indeed, they strongly suggest that she could not testify truthfully that he was at her home.

¶ 24    A postconviction petition that raises a claim of ineffective assistance based on counsel's failure to investigate and call a witness must be supported by an affidavit from the proposed witness or other evidence that will permit the circuit court to judge the usefulness of the proposed testimony. *People v. Dupree*, 2018 IL 122307, ¶ 33. The circuit court needs such evidence to assess whether the proposed witness could have provided evidence that would have been helpful to the defense. *Dupree*, 2018 IL 122307, ¶ 34. The court reviewing the petition must take all well-pleaded facts as true unless the record positively rebuts them. *People v. Brown*, 236 Ill. 2d 175, 189 (2010). But the limits of the matters to which a witness may testify is an issue of law: a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that [he or she] has personal knowledge of the matter." Ill. R. Evid. 602 (eff. Jan 1, 2011).

¶ 25    The affidavits do not support a finding that Walton had personal knowledge of defendant's location on the afternoon of March 1. To be sure, Walton's affidavit does not absolutely exclude the strained interpretation that she was with defendant while he was babysitting. Defendant's affidavit, however, makes clear that she was not there: "[H]ad I testified I would have informed that Court I were [*sic*] with *** Walton durig [*sic*] the early morning of March 1, 2013 and I ended up babysitting for [Walton] that morning leading up to the evenning [*sic*] hours." Neither affidavit supports a finding that Walton could testify that defendant was at her house during the afternoon, when the offenses were committed. Indeed, they imply that she could not.

¶ 26    Because the affidavits do not support defendant's contention that Walton's testimony would provide him with a useful alibi, it was not arguable that counsel's failure to investigate Walton's testimony or to call her caused defendant prejudice. Under *Strickland*, to show prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Walton could have testified she left defendant to babysit her children, but she could not establish that defendant was in her home when the robbery took place. Moreover, testimony that defendant was supposed to be babysitting is not persuasive alibi evidence. Defendant could have abandoned his babysitting duties and left Walton's house to commit the offenses. No reasonable probability existed that such a weak alibi would have changed the result of defendant's trial.

¶ 27                      C. Ineffectiveness for Preventing Defendant
                                    from Testifying

¶ 28    Defendant argues second that counsel "prevent[ed]" him from testifying by failing to discuss his proposed testimony and failing to interview Walton. This argument has two fatal flaws, one factual and one legal. First, factually, defendant's affidavit contradicts his claim that he did not discuss his testimony with counsel. Defendant averred, "I informed my attorney I were [*sic*] at my brothers [*sic*] house all morning and leading into the evening hours babysitting." Perhaps defendant hoped for more discussion of his testimony but, by his own account, he and counsel did discuss it. Second, legally, because defendant lacks any nonfrivolous claim that counsel failed to reasonably research possible defenses, his claim is essentially that counsel interfered with his right to testify by declining to present his preferred defense. That claim is baseless. A defendant has an absolute right to choose whether to testify. *Harris v. New York*, 401 U.S. 222, 225 (1971). But "counsel has the *ultimate* authority to decide *** trial strategy," including making a choice of defenses. *People v. Guest*, 166 Ill. 2d 381, 394 (1995). (Emphasis added.) Defendant implies that

counsel's choice of strategy must be subservient to a defendant's desire to testify, but he does not provide any authority that supports that proposition. Indeed, that proposition is not consistent with the rule that counsel has the ultimate authority to decide strategy. It thus was not arguable that counsel was ineffective for preventing him from testifying.

¶ 29    Addressing the circuit court's ruling that defendant forfeited his claim that counsel was ineffective for preventing him from testifying, defendant argues that the trial court's admonishments of his right to testify were arguably deficient. We address that argument as a separate claim, because we conclude that defendant has no arguable claim based on counsel's decision not to develop an alibi defense. We conclude that the admonishments were not arguably deficient. Defendant notes that, during the admonishments, the trial court asked defendant whether it was his "decision to stand on [his] right to remain silent and not testify." He contends that, because this language is typically "associated with a defendant's post-arrest *Miranda* rights," it might have confused him. We reject that argument. The trial court questioned defendant at length as to whether he understood his right to testify. The phrasing that resembled a *Miranda* warning was an insignificant part of that colloquy and thus could not have caused confusion. Defendant further claims that the trial court compounded the allegedly deficient admonishments because it "never asked [him] whether there was anything about defense counsel's performance that was preventing him from testify[ing]." A trial court need not give a defendant any admonishment about his right to testify. *People v. Smith*, 176 Ill. 2d 217, 234 (1997)). We have suggested that the trial court may question a defendant to ensure that the defendant understands that the choice to testify is his or hers alone. The questioning "avoid[s] creating a situation" in which, due to counsel's possible ineffectiveness, "there is substantial doubt as to whether the defendant knowingly and voluntarily waived the right to testify on his or her own behalf." *People v. Whiting*, 365 Ill. App.

3d 402, 410 (2006). But defendant cites no authority for the proposition that a court must inquire as to whether counsel's performance has influenced the defendant's choice. Thus, defendant did not present an arguable claim regarding the admonishment.

¶ 30    Defendant asserts that *People v. Brown*, 336 Ill. App. 3d 711, 718-720 (2002), a case in which counsel declined to call alibi witnesses and ignored the defendant's request to testify, "is nearly identical to the case at bar," and mandates reversal here. We disagree. The defendant in *Brown*, who was charged with a fatal Labor Day shooting in Chicago, had two family members prepared to testify that they were with defendant at a family picnic in Decatur when the shooting took place. *Brown*, 336 Ill. App. 3d at 718-19. Thus, those witnesses, unlike Walton, could have provided evidence inconsistent with the State's theory of the case. Further, the defendant in *Brown* averred that he explicitly told counsel that he wanted to testify, but counsel told him that he would be called if he were needed. *Brown*, 336 Ill. App. 3d at 719.

¶ 31    The *Brown* court did not say whether the defendant was questioned or admonished about his choice to testify, suggesting that the trial court did not inquire. Thus, the defendant in *Brown* adequately alleged that counsel frustrated his express desire to testify. Defendant here does not allege that he told counsel that he wanted to testify. Further, he told the trial court that it was his choice not to testify. *Brown* is thus distinguishable on both points.

¶ 32                    D. Ineffectiveness for Coercing Defendant into
                           Waiving His Right to a Jury Trial

¶ 33    Defendant asserts third that he stated an arguable claim that defense counsel were ineffective in that they "coerc[ed]" defendant or "manipulated" him into waiving his right to a jury trial. Defendant averred that (1) on the day that he waived his right to a jury, counsel told him that, because counsel lacked the time to select a jury and was unprepared to question potential jurors, a

- 13 -

jury trial would be delayed at least 30 days, and (2) this potential delay was his only reason for waiving his right to a jury. He contends that his waiver therefore was not voluntary.

¶ 34   These allegations do not set out the gist of a claim of ineffective assistance of counsel. Nothing in the record and nothing defendant alleges suggests actual coercion, that is, the use of threats or force to compel defendant to give up his right to a jury. See Black's Law Dictionary 325 (11th ed. 2019) (to "coerce" is to "compel by force or threat."). This is thus not a case in which counsel exerted improper pressure on defendant to waive his right. Beyond that, defendant fails to make clear how a delay would have amounted to ineffective assistance. To be sure, he asserts that, because the court set the trial date four months in advance, "counsel *** had no excuse for being unprepared to pick a jury." But that assertion is without support, and, in any event, even if we assume that counsel acted unreasonably in causing the potential delay, defendant cannot show prejudice. Defendant attempts to circumvent the prejudice prong of the *Strickland* standard by claiming that the delay made his waiver involuntary: he implies that a defendant's jury waiver is voluntary only if the likelihood of acquittal is the only factor considered. That defendant waived his right to a jury to get to trial faster does not make his waiver involuntary. Jury waivers must be knowing and voluntary (*People v. Bannister*, 232 Ill. 2d 52, 65 (2008)) but no authority suggests that they must be uninfluenced by factors such as expense or timing. Defendant made a practical choice of a bench trial over a delayed jury trial. He cannot arguably claim that his informed choice was coerced by counsel.

¶ 35                          E. Claims That Could Have Been Raised
                                  on Direct Appeal

¶ 36   Defendant's fourth and fifth claims are that trial counsel was ineffective for failing to (1) preserve a claim that the trial court improperly limited his opportunity to cross-examine Bachtell about Bachtell's drug purchases from Zguri, and (2) file a motion for discharge based on

an alleged violation of his statutory right to a speedy trial. Defendant argues that he made arguable claims precluding summary dismissal, but he concedes that his failure to raise both on direct appeal potentially results in forfeiture. See *People v. English*, 2013 IL 112890, ¶ 22. However, he argues, because appellate counsel was ineffective for failing to raise these claims on appeal, the circuit court should have considered the claims. See *English*, 2013 IL 112890, ¶ 22 ("Application of forfeiture principles is relaxed where the forfeiture stems from the ineffective assistance of appellate counsel."). We conclude that, even putting forfeiture aside, neither claim is of even arguable merit. We thus need not address defendant's sixth claim that appellate counsel was ineffective for failing to raise the issues on direct appeal. See *People v. Enis*, 194 Ill. 2d 361, 377 (2000) ("If the underlying issue is not meritorious, then [the] defendant has suffered no prejudice.").

¶ 37                    1. Ineffectiveness for Failure to Preserve a Claim that the
                       Court Improperly Limited Zguri's Testimony

¶ 38    Defendant asserts that he stated an arguable postconviction claim that trial counsel was ineffective for failing to preserve a claim that the trial court improperly limited his opportunity to cross-examine Bachtell about Bachtell's drug purchases from Zguri. He contends that whether Bachtell had bought drugs from Zguri, and particularly whether Bachtell was on his way to purchase drugs when he witnessed the aftermath of the robbery, was relevant to Bachtell's bias, as Bachtell might have been trying to protect Zguri or "conceal his own criminality." The failure to preserve that claim was not arguably prejudicial. We accept that a desire to be on good terms with the police may be a source of bias in testimony. However, no trier of fact would expect Bachtell to be in any particular difficulty with the police merely because he may have been on the way to purchase drugs for personal use. Thus, the line of questioning could not be expected to have persuaded the trier of fact of Bachtell's bias.

¶ 39　　　　　　　　2. Ineffectiveness for Failure to Move for Discharge
on Speedy Trial Grounds

¶ 40　　Defendant also asserts that he set out an arguable postconviction claim that trial counsel was ineffective for failing to file a motion for discharge based on an alleged violation of his statutory right to a speedy trial. When, as here, a defendant is in custody awaiting trial, he or she "shall be tried *** within 120 days from the date he [or she] was taken into custody unless delay is occasioned by the defendant" or by other specific circumstances not relevant here. 725 ILCS 5/103-5(a) (West 2012). As defendant concedes, delay is attributable to the defense both when the defense seeks a continuance and when it agrees to the State's request for a continuance. *E.g.*, *People v. Zeleny*, 396 Ill. App. 3d 917, 920 (2009).

¶ 41　　Defendant contends that the163 days that elapsed between his arrest and his arraignment were necessarily attributable to the State. We disagree. Defendant was arrested no earlier than March 6, 2013—the record also suggests a March 7, 2013 arrest date. On March 13, 2013, the trial court appointed counsel who agreed that day to the State's request for a continuance to turn over discovery. On April 10, 2013, defense counsel agreed to a continuance to May 8, 2013, for further discovery. On May 8, 2013, the parties agreed to a further continuance to June 5, 2013. On June 5, 2013, the court, noting that the indictment was new, addressed defense counsel, saying "I'm assuming you're not ready for arraignment today." Defense counsel accepted a continuance to August 7, 2013. On August 7, 2013, defense counsel asked for a continuance so that he could have more time to speak to defendant. The arraignment took place on August 16, 2013. Thus, the only period between defendant's arrest and arraignment during which counsel had *not* agreed to the delay was from March 6 or 7, 2013, to March 13, 2013—no more than eight days.

¶ 42     Defendant, citing *People v. Hampton*, 394 Ill. App. 3d 683 (2009) and *People v. Childress*, 321 Ill. App. 3d 13 (2001), argues that the State is always responsible for the time from a defendant's arrest to his or her arraignment. Neither *Hampton* nor *Childress* support that position.

¶ 43     In *Hampton*, we held that the mere fact that the defendant had not raised any objection to the lack of action on his case from November 4, 2007, to November 29, 2007—which was the period before the court appointed counsel for him—did not mean that that period was delay that he occasioned. *Hampton*, 394 Ill. App. 3d at 686-87. The State conceded that the speedy-trial clock starts to run automatically when a defendant is arrested, but argued that the failure to object to any delay in that first period amounted to acquiescence to the delay. *Hampton*, 394 Ill. App. 3d at 687. We concluded that those propositions are inconsistent, and we deemed that a rule requiring an express objection to avoid acquiescence to be inconsistent with the established rule that the 120-day period of section 103-5(a) starts to run automatically on a defendant's arrest. *Hampton*, 394 Ill. App. 3d at 687. In other words, mere silence about speedy trial rights cannot been deemed to be acquiescence to delay. We did not rule that the entire period before arraignment was attributable to the State. Of course, the period in which defendant is most likely to be without counsel, and thus most likely to be silent in the face of delay, is before arraignment. Nevertheless, our rationale for the decision was the defendant's lack of acquiescence, not that that lack of acquiescence occurred before he was arraigned.

¶ 44     *Childress* parallels *Hampton* in the rule applied and the result. At issue in *Childress* was whether the State had properly conceded that five periods were attributable to it. The first of those periods was before the defendant was arraigned. *Childress*, 321 Ill. App. 3d at 20-21. The *Childress* court held that the State's concession was not binding; the court would deem a delay attributable to the State only if the record supported that conclusion; it applied the rule that a "[d]efendant's

silence or failure to object to a continuance requested by prosecution is not an affirmative act attributable to [him or her,]" whereas an affirmative agreement to a continuance does create a delay attributable to the defendant. *Childress*, 321 Ill. App. 3d at 20-21. It concluded that the State was responsible for four of the five delays, including the first one, "which represented the time from defendant's arrest to his arraignment." *Childress*, 321 Ill. App. 3d at 21. Defendant assumes that the *Childress* court's whole rationale for holding the State responsible for the first period was that it occurred before the arraignment, but that is inconsistent with the court's statement of the applicable rule.

¶ 45    Because defense counsel either explicitly sought or agreed to continuances for all but seven or eight days, only those days are attributable to the State, so this claim is "completely contradicted by the record." See *Hodges*, 234 Ill. 2d at 16. We reject as unsupported by authority defendant's contention that all time before arraignment is delay attributable to the State.

¶ 46                                    III. CONCLUSION

¶ 47    For the reasons stated, we conclude that all of defendant's claims of ineffective assistance of counsel failed to state even the gist of a constitutional claim. We therefore affirm the first-stage dismissal of defendant's postconviction petition.

¶ 48    Affirmed.