# Illinois Official Reports

## Appellate Court

---

### *People v. Williams*, 2017 IL App (3d) 140841

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KIMBERLY J. WILLIAMS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0841 |
| Filed | April 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CF-401; the Hon. Edward A. Burmila, Jr., Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier and Sean W. Collins-Stapleton, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Justices Carter and McDade concurred in the judgment. |

**OPINION**

¶ 1      Defendant, Kimberly J. Williams, appeals from her two convictions for aggravated battery. Defendant argues (1) the State failed to prove beyond a reasonable doubt that defendant's use of force was not justified, (2) defendant was deprived of her due process right to a fair trial, and (3) one of defendant's convictions must be vacated under the one-act, one-crime rule. We affirm in part and vacate in part.

¶ 2                                    FACTS

¶ 3      The State charged defendant by indictment with two counts of aggravated battery (720 ILCS 5/12-3.05(a)(1), (f)(1) (West 2012)) and one count of battery (720 ILCS 5/12-3(a)(1) (West 2012)). At trial, the court granted a directed finding for defendant on the battery charge. Defendant does not raise an issue regarding this charge on appeal. Count I alleged:

> "[D]efendant, in committing a battery, *** without legal justification and by use of a deadly weapon, to wit: a bat, knowingly made physical contact of an insulting or provoking nature with Theresa Washington, in that said defendant struck Theresa Washington about the body with a bat."

Count II alleged:

> "[D]efendant, in committing a battery, *** knowingly and without legal justification caused great bodily harm to Theresa Washington, in that said defendant struck Theresa Washington about the body with a bat."

Prior to trial, defendant disclosed that she intended to raise the affirmative defense of self-defense. The case proceeded to a bench trial.

¶ 4      The undisputed facts establish that defendant was in a relationship with an individual in Vietnam whom she referred to as "master." Defendant called herself "slave" in the relationship. "Master" asked defendant to take nude photographs while performing housework. "Master" recommended that defendant use the internet website collarme.com to find an individual to take the photographs. Defendant contacted Theresa Washington on this website and arranged a meeting at TGI Fridays on the afternoon of January 15, 2013. At the restaurant, defendant and Washington conversed and consumed alcoholic beverages. Around 5:30 p.m., defendant and Washington left the restaurant to go to defendant's house. Along the way, defendant purchased two bottles of wine.

¶ 5      At defendant's house, Washington waited inside while defendant walked her dogs. When defendant returned, she and Washington got into an altercation. As a result of the altercation, Washington received treatment for a broken arm, contusions, and abrasions. Defendant also received scratches and contusions but declined treatment.

¶ 6      Defendant and Washington do not agree on the events that led to the altercation or the course of the altercation. Washington testified that when defendant returned from walking the dogs, she yelled at Washington for breaking the cork in a wine bottle. Defendant removed the broken cork, then she and Washington drank the wine and conversed for several hours in the living room. At one point, defendant called a male acquaintance and asked him to come to the house. The male did not come over, and defendant became agitated, removed her clothing, and sat naked on the floor. Washington asked if defendant wanted to pose for the nude photographs, but defendant could not find her camera. Defendant then began acting sexually

provocative. Washington told her to stop, and defendant asked Washington to "put her through some paces as far as [Washington] being a dominatrix and [defendant] being a slave." Washington told defendant that she was no longer a dominatrix. However, defendant acted increasingly aggressive until Washington agreed to be her dominatrix. Defendant refused to comply with Washington's command to crawl. Washington told defendant that she had to cooperate and "smacked [defendant] on her butt," grabbed defendant's hair, and told defendant to crawl. Defendant crawled to her bedroom. In the bedroom, defendant started laughing and refused to comply with Washington's commands. Washington told defendant she could not continue and left the bedroom. Washington put on her boots and sweater and told defendant that she wanted to leave. Defendant became aggressive and got "in [Washington's] face." Washington was "petrified," and she pushed defendant. Defendant stumbled, returned to her prior position, and continued to yell. Washington again pushed defendant, and a small table broke during defendant's fall. Defendant used one of the broken table legs to hit Washington in her shoulders and back. Washington yelled for defendant to stop and told defendant to leave her alone. In the frenzy, Washington lost consciousness. Washington next recalled lying on the floor while defendant stood over her with a baseball bat. Defendant moved to swing the bat, and Washington yelled that defendant had broken her arm. Washington told defendant to let her go, and defendant screamed at Washington to get out of the house. Defendant continued to hit Washington, which prevented Washington from leaving. Eventually, Washington wrested the baseball bat from defendant, but she did not have enough strength to swing the bat, and defendant recovered it.

¶ 7 During the altercation, defendant tried to drag Washington out of the house by her hair. Washington resisted because she did not have her coat or purse. Defendant shouted for Washington to leave but impeded Washington's exit by blocking the door. Eventually, defendant forced Washington out the front door without her purse. On the porch, Washington grabbed defendant's baseball bat to stop defendant from hitting her. Defendant broke free and hit Washington seven or eight additional times. Washington sat on the porch stairs to avoid falling and asked defendant to stop hitting her because she was attempting to leave. Defendant stopped hitting Washington, and Washington used her right arm to move down the stairs. Washington then ran to a neighboring house for help.

¶ 8 On cross-examination, Washington said she took the medications Wellbutrin, Prozac, Xanax, and Celebrex. Washington's doctors said that it was safe to drink a small amount while taking these medications. Washington acknowledged that she had exceeded this recommendation prior to the altercation.

¶ 9 Defendant testified that around 7:30 p.m., she changed out of her work clothes in an area where Washington could see her. After putting on fresh clothes, defendant and Washington continued to drink wine and converse. As the night progressed, Washington became more relaxed and told defendant that she was a dominatrix. Defendant was shocked, as Washington stated in her Internet posting that she was a "slave" or submissive person. Defendant and Washington continued to converse and made a few telephone calls. Thereafter, Washington made sexual advances toward defendant. Defendant felt threatened and uncomfortable, as their agreement did not involve sexual relations. Defendant asked Washington to stop or leave, but Washington continued her advances. Washington told defendant that she was too inebriated to leave. Defendant arranged for Washington to sleep on the couch and went to her bedroom to sleep.

¶ 10     After midnight, Washington woke up defendant by pulling defendant by her hair down the hallway. Defendant feared that Washington intended to sexually assault her and she bit, scratched, and kicked Washington. Washington pushed defendant three times. On the third push, Washington grabbed defendant and they fell onto a table, breaking it. Washington continued to attack defendant, and defendant retrieved a baseball bat. Defendant hit Washington with the baseball bat several times. Washington tried unsuccessfully to take the baseball bat from defendant, but defendant opened the door and ordered Washington to leave. Defendant chased Washington out of the house with the baseball bat. According to defendant, "[Washington] fell down the stairs, she slipped down the stairs like on her bottom." Washington then "stood up and turned like she was going to attack [defendant] again." Defendant hit Washington one or two additional times, at which point she felt safe enough to go into the house.

¶ 11     When the police arrived, defendant told an officer that Washington had attacked her and she acted in self-defense. After defendant acknowledged she had hit Washington, the officer placed defendant under arrest.

¶ 12     On cross-examination, the State asked defendant:

"Q. Isn't it true that when she was on the porch of your home, that she was screaming and crying for help?

A. She was screaming for and crying for help but it was after she slid down the stairs. I was also crying and screaming for help the whole time because I was being attacked as well."

After Washington fell down the stairs, defendant stated:

"I was at the landing at the edge of the landing, and it all happened so fast. She turned around, stood up, and I thought she was coming after me again, so I stepped down, hit her, hit her, and went in my house and I locked the door."

¶ 13     The court found that Washington and defendant's stories were similar and the resolution of the case turned on its determination of who was the aggressor. The court found that defendant's use of a baseball bat to strike Washington constituted deadly force and defendant's belief that Washington intended to sexually assault her was unreasonable. The court further found:

"[E]ven if [it] were to believe the defendant's story that she was in a fight for her life and she was trying to defeat the commission of a forcible felony, the defendant testified to something that occurred out on the porch that the Court believes really is determinative of this case. She said after *** Washington had fallen down to the ground and slipped down the stairs, that she then began to cry for help.

So once *** Washington reached the bottom of those stairs and she started to call for help, she surely knew, if her version of the event was accurate, that the assault had ended, that any attempt on *** Washington's part to come after her had ended. She was out of the residence. She had an opportunity, although she doesn't have a legal duty in Illinois to retreat, she did have an opportunity to retreat.

She didn't go back into her home. And she told us that what she did, she thought that *** Washington was going to get up again so she went and she hit her a few more times with the baseball bat.

Now, even as I said, if I believed her version of the event, she certainly did not have the right to use deadly force against *** Washington when she had fallen down the stairs, was at the bottom of the stairs calling for help.

So on the basis of the facts that are before the Court, the State did prove beyond a reasonable doubt that the defendant did not act in self-defense and she's guilty of both counts of aggravated battery."

¶ 14 Defendant filed a motion to reconsider. The motion referenced the court's factual findings and testimony regarding the altercation on the porch. The court denied defendant's motion. The court sentenced defendant to concurrent terms of 54 months' imprisonment on the two aggravated battery charges. Defendant appeals.

¶ 15 ANALYSIS

¶ 16 I. Sufficiency of the Evidence

¶ 17 Defendant argues the evidence is insufficient to sustain her aggravated battery convictions because the State failed to prove that she did not act in self-defense. Upon review, we accept the court's credibility findings and find the evidence, when viewed in the light most favorable to the State, disproved defendant's defense of self-defense.

¶ 18 In a challenge to the sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the elements of the crime were proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Determinations regarding the credibility of witnesses, the weight to be given to testimony and evidence, and the reasonable inferences to be drawn from the evidence are the responsibility of the trier of fact. *People v. Holman*, 2014 IL App (3d) 120905, ¶ 56. A defendant's conviction is subject to reversal only where the evidence is so improbable, unsatisfactory, or inconclusive that it leaves reasonable doubt as to defendant's guilt. *Id.*

¶ 19 Defendant's challenge to the sufficiency of the evidence is limited to the State's proof that she did not act in self-defense. Defendant does not challenge the sufficiency of the evidence of the elements of aggravated battery.

¶ 20 When a defendant raises the defense of self-defense, to secure a conviction, the State must disprove defendant's claim beyond a reasonable doubt. 720 ILCS 5/7-14 (West 2012); *Holman*, 2014 IL App (3d) 120905, ¶ 57. The elements of self-defense include that (1) unlawful force was threatened against a person, (2) the person threatened was not the aggressor, (3) the danger of harm was imminent, (4) the use of force was necessary, (5) the person threatened actually and subjectively believed a danger existed that required the use of force, and (6) the beliefs of the person threatened were objectively reasonable. *People v. Lee*, 213 Ill. 2d 218, 225 (2004) (citing 720 ILCS 5/7-1 (West 1998), and *People v. Jeffries*, 164 Ill. 2d 104, 127-28 (1995)). Negation of any of these elements defeats defendant's claim of self-defense. *Id.*

¶ 21 In the instant case, defendant's use of a baseball bat constituted deadly force, as it was intended or likely to cause great bodily harm. The use of deadly force is justified only if the user "reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2012).

¶ 22 Here, the State proved defendant's use of deadly force was unreasonable. Defendant's testimony that she feared Washington intended to sexually assault her was supported by no other facts in the record. Specifically, the parties had agreed that their meeting and arrangement to take the photographs involved no sexual activities. No testimony was proffered that Washington attempted to remove defendant's clothes or commit an act of penetration. The evidence only established that defendant and Washington got into a physical altercation that started in the house and ended on the porch. Washington's testimony further undermined the reasonableness of defendant's belief that deadly force was required. Washington stated that after she broke her arm, defendant continued to strike her with the baseball bat. At that point, it was highly unreasonable for defendant to believe that such force was necessary to prevent imminent death or great bodily harm, as Washington was unarmed and injured. Ultimately, the court implicitly found Washington to be credible and that defendant's belief that Washington intended to commit a forcible felony to be unreasonable. We defer to the court's determination on these findings of fact and issues of credibility, and we do not find the court's judgment to be improbable based on the evidence. Therefore, viewed in the light most favorable to the State, the evidence disproved beyond a reasonable doubt that defendant acted in self-defense.

¶ 23                              II. Right to Fair Trial

¶ 24 Defendant argues that she was deprived of her due process right to a fair trial when the court based its guilty finding on the belief that the undisputed evidence showed defendant struck Washington while Washington was passively sitting on the porch. Defendant contends that she actually testified that Washington stood and turned as if to attack her. The State argues defendant forfeited review of this issue. We find defendant forfeited this issue, and plain-error review is not warranted because the court did not err.

¶ 25 To preserve an issue for appellate review, a defendant must object to the claimed error at trial and raise it in a posttrial motion. *In re Samantha V.*, 234 Ill. 2d 359, 368 (2009). Here, defendant did not object to the court's comment on the evidence. Defendant argues that we should relax this partial forfeiture because the issue concerns the conduct of the circuit court. See *People v. Davis*, 185 Ill. 2d 317, 343 (1998). Defendant essentially seeks application of the *Sprinkle* doctrine, which relaxes the forfeiture rule in situations where counsel's objection would be rendered futile because it would fall on deaf ears. *People v. Thompson*, 238 Ill. 2d 598, 612 (2010); see also *People v. Sprinkle*, 27 Ill. 2d 398 (1963). However, the *Sprinkle* doctrine applies only in "extraordinary circumstances," and absent compelling circumstances, the forfeiture rule shall apply. *Thompson*, 238 Ill. 2d at 612. In this case, we do not find that extraordinary circumstances warrant relaxation of the forfeiture doctrine. Nothing in the record indicates that an objection to the court's ruling would have been futile. Therefore, this issue may only be reviewed for plain error.

¶ 26 The plain-error doctrine provides a limited exception to the forfeiture rule, which allows a reviewing court to consider an unpreserved error. *People v. Sebby*, 2015 IL App (3d) 130214, ¶ 34. The plain-error doctrine allows a reviewing court to consider an unpreserved error where a clear or obvious error occurred, and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant" or (2) "[the] error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The first step of plain-error review is to determine whether error occurred. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008).

- 6 -

¶ 27    Defendant argues the court committed plain error under either prong when it failed to correctly recall and consider critical defense evidence in finding her guilty. Where a circuit court sits as trier of fact, the court's failure to remember and consider testimony that is the crux of the defense deprives defendant of her right to receive a fair trial. *People v. Mitchell*, 152 Ill. 2d 274, 324 (1992).

¶ 28    We find that the court's recollection of the testimony regarding the events that occurred on the porch is not error. First, the court's finding that Washington began to cry after sliding down the stairs is supported by the record. On cross-examination, defendant said Washington cried for help after she slid down the stairs. As defendant argues, she also testified that Washington assumed an attack position after sliding down the stairs, which prompted defendant to hit Washington. In its ruling, the court did not discuss this portion of defendant's testimony. Considering the court's ruling as a whole, we find this omission to be an implicit rejection of defendant's contention that Washington continued to act aggressively after she slid down the stairs. Second, the court's failure to expressly consider defendant's statement that Washington assumed an attack position is not error, as it did not form the crux of the case. In its ruling, the court initially found defendant's claim of self-defense was defeated by her unreasonable belief that deadly force was required. After making this finding, the court said "even if [it] were to believe defendant's story," defendant did not have the right to use deadly force. The court's phrasing indicates that the subsequent findings provided an alternative basis for the guilty verdicts. As an alternate basis, it cannot be considered to form the crux of the case because, assuming we found the alternate basis to be error, the court's primary argument remains sound. Therefore, the court did not deprive defendant of her due process right to a fair trial.

¶ 29                                III. One-Act, One-Crime

¶ 30    Defendant argues that one of her aggravated battery convictions must be vacated under the one-act, one-crime rule because both convictions are premised on the same physical act of striking Washington with a baseball bat. We find that one of defendant's aggravated battery convictions must be vacated, as the State did not express intent to treat defendant's conduct as two separate offenses in the indictment or at trial.

¶ 31    The one-act, one-crime rule involves a two-step analysis: (1) determine whether defendant's conduct involved multiple acts or a single act, and (2) if defendant's conduct involved multiple acts, multiple convictions are improper only if one offense is a lesser-included offense of another. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). In this case, we limit our review to the first part of the analysis, as neither of the parties raises a lesser-included offense argument. We review *de novo* the issue of whether defendant's convictions violate the one-act, one-crime rule. *People v. Artis*, 232 Ill. 2d 156, 161 (2009).

¶ 32    Generally, a defendant may not be convicted of multiple offenses that are based on the same physical act. *People v. Almond*, 2015 IL 113817, ¶ 47. However, multiple convictions and concurrent sentences are permitted where a defendant has committed several interrelated acts. *Id.* An act is defined as " 'any overt or outward manifestation that will support a separate offense.' " *People v. Crespo*, 203 Ill. 2d 335, 341 (2001) (citing *People v. King*, 66 Ill. 2d 551, 566 (1977)). To obtain multiple convictions for related acts, the State must provide defendant notice of its intent to treat the conduct as separate by apportioning the conduct among the charged offenses. *Id.* at 345. For example, in *Crespo*, the supreme court held the charging instruments and argument of the prosecution at trial revealed that the State intended to treat

defendant's conduct as a single act. *Id.* at 342, 344. Specifically, the charging instrument failed to differentiate between the separate stab wounds inflicted during defendant's commission of the offenses of armed violence and aggravated battery. *Id.* at 344-45. At trial, the State generically argued that defendant stabbed the victim three times. *Id.* at 343-44. The State did not apportion each act of stabbing to the two charges. *Id.* The supreme court held the State did not express an intent to treat the conduct as separate acts, and therefore, the stab wounds could not support multiple convictions. *Id.* at 345.

¶ 33    The instant case is factually analogous to *Crespo*. Here, the indictment alleged in count I that defendant "knowingly made physical contact of an insulting or provoking nature with *** Washington, in that said defendant struck *** Washington *about the body with a bat*." (Emphasis added.) Similarly, count II alleged defendant "knowingly and without legal justification caused great bodily harm to *** Washington, in that said defendant struck *** Washington *about the body with a bat*." (Emphasis added.) The State did not attempt to apportion these offenses by providing distinct striking locations or resulting injuries. Additionally, the State did not argue at trial that each count was directed at a different blow or injury location. Therefore, defendant lacked the requisite notice that the State intended to treat her conduct as two separate acts, and multiple convictions cannot be sustained. Accordingly, we vacate the conviction and sentence for aggravated battery entered on count II of the indictment.

¶ 34                                            CONCLUSION

¶ 35    For the foregoing reasons, we affirm in part and vacate in part the judgment of the circuit court of Will County.

¶ 36    Affirmed in part and vacated in part.