2025 IL App (1st) 231963-U

No. 1-23-1963

Order filed March 7, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 22 CR 03251 |
| LAVELLE WATTS, | ) ) | Honorable Shelley Sutker- Dermer and Paul Pavlus, |
| Defendant-Appellant. | ) | Judges, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not err in denying defendant's request to proceed *pro se*. We vacate one of defendant's convictions for aggravated battery of a peace officer as contrary to the one-act, one-crime rule.

¶ 2    Lavelle Watts was sentenced to two years' probation after the trial judge found him guilty of two counts of aggravated battery of a peace officer. On appeal, he contends that the trial court abused its discretion by denying his request for self-representation and that his two convictions violate the one-act, one-crime rule because they resulted from the same undifferentiated conduct.

We affirm his conviction for aggravated battery involving bodily harm and vacate his conviction for aggravated battery based on physical contact of an insulting or provoking nature.

¶ 3                                      Background

¶ 4      Watts was indicted on two counts of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2022))—Chicago police officer Fred Estrada—while Estrada was on duty. Count I alleged Watts, in committing the battery, knowingly caused bodily harm to Estrada by striking him about the body. Count II alleged Watts made physical contact with Estrada of an insulting or provoking nature by striking him about the body.

¶ 5      After being informed that Watts was "agitated" and suffering from "uncontrolled anger," the trial court found that Watts could not be brought to court safely and ordered a healthcare evaluation. At a hearing a month later, Watts requested release on electronic monitoring. He repeatedly interrupted the court and attorneys as they tried to set the next court date. His counsel asked him to "calm down" and said, "Stop talking. You're not helping right now."

¶ 6      At the next hearing, Watts again requested release on electronic monitoring, although the sheriff's office had not been able to verify his address for release. Watts repeatedly interrupted the court with demands to plead guilty as well as assertions that he was not guilty. The court asked him to calm down and explained discovery was incomplete. It offered to refer Watts for housing assistance, but Watts said he did not want to live with others and had an apartment. Watts expressed frustration about the delay, and the court noted that it may have to order a hearing on his fitness to stand trial. The court stated, "I don't believe there's a fitness issue here. I believe you're just angry. But don't be disrespectful to the court, and don't be disrespectful to your attorney."

¶ 7 Two weeks later, the court held another hearing at which the State proffered that Watts had punched and headbutted Chicago police officer Fred Estrada. The court released Watts with a curfew pending trial.

¶ 8 Almost a year later, Watts appeared with trial counsel, an assistant public defender, who informed the court that Watts had filed a motion to proceed *pro se*. Watts confirmed he wanted to represent himself because his counsel "ha[d] yet to file any type of motions." Watts repeatedly interrupted the court as it attempted to address his motion. Watts asserted he had a "religious right to practice" and a "right to religion to practice self-defense." He further claimed video evidence had been altered using artificial intelligence.

¶ 9 The court explained that if Watts proceeded *pro se*, it would hold him to the same standards as an attorney. As the court admonished him about his right to represent himself, Watts interrupted, "I might decide *** to change my plea to guilty. Who knows. Maybe I want to represent myself and change my plea to guilty." When the court asked if Watts wanted his lawyer to represent him in the guilty plea, he said, "No, pleading guilty under duress." The court explained it had to find Watts was pleading guilty of his own free will. It further explained that it had to review the admonishments before allowing Watts to represent himself and that he would not be able to appeal a conviction on the basis of inexperience. The court asked Watts if he understood, and he responded, "Yeah. Do you understand that once I plead guilty, they're going to fire you for being an incompetent white woman, right? *** Because once you go over the evidence and see what happens in this case and you let this verdict stand, they are going to fire you." The court then passed the case, noting it needed to ensure Watts was "competent and capable" to plead guilty.

¶ 10    When recalled, the court continued with the admonishments. As the court explained the charges, this exchange occurred:

"DEFENDANT: So it's two counts of the same charge.

THE COURT: Two charges of aggravated battery, yes.

DEFENDANT: Okay.

THE COURT: They are charged two different ways. One is causing bodily harm and one is knowingly made physical contact of an insulting or provoking nature. Understand those charges?

DEFENDANT: Yes."

The court addressed the sentencing range and that Watts might be at a disadvantage to the two prosecutors during the trial. Watts told the court to "[g]o watch the video" and said he was going to "prove that your system is corrupt." The court asked Watts not to yell, saying "I know you're angry. I hear it." Watts continued to interrupt and complain about his attorney. The court stated, "I don't know if you can get up in front of a jury with the way that you interrupt," and, "I won't allow you to interrupt me. And if you start doing that, you'll be removed from the courtroom. You could be tried without even being in the room."

Watts continued yelling and asserted his counsel was ineffective for not filing a motion to dismiss. The court again told Watts, "Stop yelling at me. Stop." When Watts continued, the court repeated, "Don't yell in my courtroom. Don't do it again. I won't tolerate it." As the court attempted to discuss a trial date, Watts interrupted:

"THE COURT: You are being insulting to the Court. You are just plain rude.

- 4 -

DEFENDANT: The Court is insulting itself by not following the laws. Let's be honest.

THE COURT: No, you are being rude and disrespectful and I don't think that that's the right way—

DEFENDANT: I didn't call you any name. I said incompetent when I talked to you, and incompetent is just a term for not doing your job properly. It's not calling you a name.

[(ASSISTANT PUBLIC DEFENDER)]: You don't need to be called names to be rude, you can interrupt, you can be loud, you can be arrogant."

¶ 11 The court stated it would not remove trial counsel from the case that day, scheduling a jury trial the following month. Watts said, "We'll get another continuance and another continuance and another continuance and another continuance."

¶ 12 At the next date, the State told the court it was not ready for trial due to the unavailability of police witnesses. Watts interrupted, claiming that the police officer would perjure herself if she testified and that his counsel was incompetent. He told the court that every time he came to court, he would speak his piece and to "get ready." The court responded, "Do not speak to me like that, you are very disrespectful." After Watts continued interrupting, the court said, "Mr. Watts, can you hear that I am speaking? Can you hear me? I am listening to you. Could you please stop talking for one minute, so I can ask you to stop screaming and pointing at me and talking to your attorney like this." Watts continued, and the court threatened to remove him from the courtroom.

¶ 13 The court tried to explain that it was continuing the case for status before another judge who would preside over the trial. Watts interrupted, repeating the police officer would perjure herself, complaining about his counsel, and expressing frustration over the delays. The court

threatened to hold Watts in contempt and continued the case, stating that the other judge would determine whether Watts could represent himself at trial.

¶ 14    The record reflects that Watts did not raise or renew his motion to proceed *pro se* again.

¶ 15    Watts appeared for trial with trial counsel, who had filed a motion *in limine* objecting to the admission of the audio recording from the police officers' body-worn cameras. Before the court could rule on the motion, this exchange occurred:

"DEFENDANT: Excuse me, may I speak?

[(ASSISTANT PUBLIC DEFENDER)]: No.

THE COURT: Wait, wait, wait. Sir, sir. Here's what's going on. Your—

DEFENDANT: He's [going] to sit there and try to void the audio out so this Court, the officer—me telling the officer to push me and he's pushing me. Man, you all not [going to]—you all not [going] to railroad me like that, man, no. And on top of that—

THE COURT: Wait.

[(ASSISTANT PUBLIC DEFENDER)]: Stop, stop.

DEFENDANT: No, because I have been cool. And on top of that, he [doesn't] want to subpoena the officers' toxicology reports that they would prove that they perjured themselves because they would have to take Covid vaccinations when they took me to the hospital, if they [were] all in contact with somebody who has not been what, vaccinated or swabbed.

THE COURT: Sir—

DEFENDANT: I know they [are] perjuring themselves. You all know they [are] perjuring themselves. You['re going] to sit there and let this roll.

[(ASSISTANT PUBLIC DEFENDER)]: Yes, it's not relevant.

THE COURT: Sir, listen. Wait, wait, wait.

DEFENDANT: This proves perjury.

THE COURT: Sir. We are not going to do this. When I talk, you let me talk. Did you see me? I allowed you to rant and rave, and I didn't interrupt. No one interrupts in my courtroom. I'll give you the opportunity to talk when it's appropriate.

Now it's my turn to talk. So here is what we are going to do. Your lawyer is presenting the best case for you. He's been schooled, he['s] taken tests, he has experience, he's been around for a long time. He knows what he's doing."

¶ 16    Watts complained that his counsel was ineffective, and the court responded that his counsel was experienced and t toxicology reports were irrelevant. Watts then requested to change to a bench trial and waived his right to a jury trial. The case proceeded to a bench trial.

¶ 17    The State called Chicago police officers Estrada and Lori Augustine as witnesses. Estrada and Augustine testified to substantially the same version of events. On February 25, 2022, around 1:00 a.m., while in a marked police car, they saw two vehicles swerve around a person in the middle of the street. That person—later identified as Watts—walked toward the officers' car yelling and "throwing his fists," before throwing his cell phone at the windshield.

¶ 18    Estrada got out and said, "Hey, what's going on? Are you ok? Do you need help?" Watts responded, "Oh, just shoot me. I don't like you guys; just shoot me." Augustine, too, got out of the car, and Watts started walking toward her. Estrada yelled, "I'm over here; come talk to me." Watts walked toward him with his fists clenched, "saying derogatory remarks." Watts came close enough that Estrada could "feel him spitting." Estrada pushed Watts and told him to back off. Watts

stepped toward Estrada a second time, and Estrada pushed him again. Watts then stepped toward Estrada a third time, pulled his pants up, and clenched both fists about six inches above his waist. Estrada inferred that Watts wanted to fight. Estrada pushed Watts back a third time, then Watts cocked his right hand in a closed fist and swung at Estrada, striking his chin.

¶ 19    Estrada told Watts he was under arrest, unclipped his handcuffs, and grabbed Watts's arm. Watts grabbed one of Estrada's arms and headbutted Estrada in the mouth. Estrada and Watts fell to the ground and struggled. Estrada and Augustine subdued Watts with the help of other officers who arrived. Estrada sustained lacerations to his upper and lower lips.

¶ 20    The State introduced photographs of Estrada's injuries, video from Estrada and Augustine's body-worn cameras, and police surveillance camera at the intersection. Audio from the body-worn cameras was excluded. The footage shows Watts punch Estrada in the face and back up five steps. Estrada approaches Watts and grabs his arms, the two briefly struggle. Watts headbutts Estrada and tackles him to the ground. Between the punch and headbutt about eight seconds elapsed.

¶ 21    Watts testified that he was crossing the street around 2:00 a.m. when a police car drove through a red light and approached him. No other vehicles had to move around him. Watts threw his cell phone at the approaching car and raised his hands. An officer got out and started shoving him. Watts struck the officer, headbutted him, and tackled him. Watts denied putting his hands in a "fighting position," instead characterizing his motions as "submission." Watts asserted that the video had been altered. He admitted to being under the influence of cocaine and PCP at the time.

¶ 22    In closing, Watts's counsel asked the court to find him not guilty, arguing Estrada "forgot his position" when he shoved Watts instead of attempting to de-escalate the situation.

¶ 23 The trial court found Watts guilty of both counts of aggravated battery of a peace officer. It denied Watts's motion for a new trial and sentenced him to two years' probation.

¶ 24                                     Analysis

¶ 25                   Denial of Request to Proceed *Pro Se*

¶ 26 Watts first argues that the trial court abused its discretion by denying his request to proceed *pro se* "without explanation." The State responds that context shows the trial court denied Watts's request based on his lack of civility and decorum, a recognized reason for denying a request for self-representation. Watts acknowledges we may affirm on any basis supported by the record (see *In re Marriage of Loomis*, 348 Ill. App. 3d 972, 974 (2004)), but argues that Watts's misconduct was not serious or obstructionist. We disagree.

¶ 27 A criminal defendant has a constitutional right to self-represent if he or she knowingly and intelligently relinquishes the right to counsel. *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011) (citing *Faretta v. California*, 422 U.S. 806, 835 (1975)). The request must be clear and unequivocal. *Id.* at 116.

¶ 28 The right of self-representation, however, is not absolute. A defendant may forfeit it through serious and obstructionist misconduct. *People v. Hunt*, 2016 IL App (1st) 132979, ¶ 16. In exceptional situations, a defendant's behavior while pursuing self-representation may be sufficiently disruptive to justify denying the request. See *People v. Ward*, 208 Ill. App. 3d 1073, 1084 (1991); see also *People v. Rainey*, 2019 IL App (1st) 160187, ¶¶ 78, 93-94 (affirming denial of third request to proceed *pro se* where defendant had engaged in pattern of pretrial misconduct during a previous self-representation); *People v. Rohlfs*, 368 Ill. App. 3d 540, 545 (2006)

(defendant committed obstructionist misconduct by "filing ill-conceived pretrial pleadings and disregarding the court's admonitions").

¶ 29    We review this issue for abuse of discretion. *Baez*, 241 Ill. 2d at 116. The court abuses its discretion if it rules arbitrarily and without a logical basis. *Hunt*, 2016 IL App (1st) 132979, ¶ 16.

¶ 30    As a preliminary matter, Watts arguably forfeited his challenge by neglecting to include it in his motion for a new trial. See *People v. Bahena,* 2020 IL App (1st) 180197, ¶ 28 (to preserve error for review, defendant generally must object at trial and in posttrial motion). But, the State did not raise forfeiture in its brief. See *id.* ¶ 29 (State forfeited forfeiture argument by failing to raise it on appeal); see also Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited").

¶ 31    Watts unequivocally requested to represent himself. After attempting to admonish Watts through many interruptions and digressions, the court passed the case. When recalled, the court made further attempts to admonish him and denied his request.

¶ 32    After reviewing the record, we find the court's ruling was neither arbitrary nor without a logical basis. From the inception of the case, Watts demonstrated a lack of civility and decorum, creating a valid basis to deny his request to proceed *pro se*. See *Rainey*, 2019 IL App (1st) 160187, ¶ 74 ("A defendant's lack of civility and decorum *** is a valid basis for denying his request for self-representation."). Throughout pretrial proceedings, the trial court repeatedly cautioned Watts to stop yelling and interrupting. In one instance, it found Watts could not safely appear in court due to "uncontrolled anger" and noted concern over his fitness to attend trial. On multiple occasions, the court acknowledged Watts's anger, asked him to calm down, and instructed him not to be disrespectful to the court and his attorney. The record shows Watts remained insolent.

¶ 33 Specifically, on the date Watts requested to represent himself, he displayed animosity toward the court, calling it corrupt and the judge "an incompetent white woman" as she attempted, through 30 pages of transcript, to admonish Watts as required by law. See Ill. S. Ct. R. 401(a) (eff. July 1, 1984) (when defendant requests waiver of counsel, court must ensure defendant understands nature of charge, sentencing range, and right to counsel); see also *Faretta*, 422 U.S. at 835 (defendant "should be made aware of the dangers and disadvantages of self-representation"). Watts constantly interrupted the admonishments, including with threats to "prove that your system is corrupt" and other irrelevant contentions, such as asserting a "religious right to self-defense" and claiming without evidence that artificial intelligence had altered video evidence. Finally, the court stated it would not allow defense counsel to be removed from the case that day. Watts continued interrupting as the court tried to schedule the next court date with the attorneys.

¶ 34 In dealing with a *pro se* defendant, the trial court must tolerate "some unprofessionalism." But not where "defendant's conduct is so defiant, disruptive, or disrespectful that it 'threaten[s] to forestall' the proceedings." *Rainey*, 2019 IL App (1st) 160187, ¶ 76 (quoting *United States v. Smith*, 830 F.3d 803, 810 (8th Cir. 2016)). A "persistent pattern of pretrial misconduct" may justify denying a defendant's right of self-representation. *Id.* ¶ 78.

¶ 35 Here, the trial court patiently sought to curtail Watts's pattern of contentious conduct to preserve the judicial process's integrity. As mentioned, the court had found Watts could not safely be brought to court due to "uncontrolled anger." Then, at a hearing, the court had to pass and later recall the case due to Watts's yelling and interruptions. This conduct went beyond "unprofessionalism," where it constantly impeded attempts to admonish Watts. Indeed, although Watts proceeded with appointed counsel, he interrupted proceedings on one occasion, prompting

the court to threaten to hold him in contempt. He also interrupted with an angry, irrelevant outburst during the first moments of trial.

¶ 36    Under these circumstances, the trial court did not abuse its discretion. Although the court failed to state its reasoning explicitly, the record of proceedings makes plain that the denial was due to Watts's interruptions, yelling, irrelevant assertions, and general lack of decorum. We may affirm the trial court's ruling on any ground supported by the record, and we do so here. See *Loomis*, 348 Ill. App. 3d at 974.

¶ 37                            One-Act, One-Crime Rule

¶ 38    Watts next contends his two convictions for aggravated battery of a peace officer violate the one-act, one-crime rule.

¶ 39    The one-act, one-crime rule prohibits multiple convictions based on the same physical act. *People v. Smith*, 2019 IL 123901, ¶ 13. An "act" is " 'any overt or outward manifestation which will support a different offense.' " *Id.* ¶ 18 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)). In applying the rule, we first determine whether defendant's conduct involved a single act or multiple acts; if the conduct involved multiple acts, we next determine whether any of the offenses is a lesser-included offense of another. *Id.* ¶ 15. The less serious offense conviction must be vacated if a defendant's convictions violate the one-act, one-crime rule. *People v. Artis*, 232 Ill. 2d 156, 170 (2009). We review *de novo* whether convictions violate the rule. *People v. Coats*, 2018 IL 121926, ¶ 12.

¶ 40    When seeking multiple convictions based on closely related acts, the State must show its intent to apportion separate acts to separate charges. *People v. Crespo*, 203 Ill. 2d 335, 344-45 (2001) (violation of one-act, one-crime rule where State failed to apportion separate stabs to

separate charges); see also *People v. Williams*, 2017 IL App (3d) 140841, ¶ 33 (violation of one-act, one-crime rule where State failed to apportion separate strikes of baseball bat). We examine the charging instrument and the State's arguments at trial for our determination. *Crespo*, 203 Ill. 2d at 343-45.

¶ 41    Although Watts failed to allege a violation of the rule before the trial court, we may review the issue on appeal for plain error as it affects a substantial right. *Smith*, 2019 IL 123901, ¶ 14. Plain error is "clear or obvious" error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 42    The State charged Watts by indictment with two counts of aggravated battery of a peace officer. The charging instrument used identical language for each count. Count I alleged Watts "knowingly caused bodily harm to Chicago Police Officer Fred Estrada, to wit: *struck Officer Fred Estrada about the body*" (emphasis added). Count II alleged that he "knowingly made physical contact of an insulting or provoking nature with Officer Fred Estrada, to wit: [Watts] *struck Officer Fred Estrada about the body*" (emphasis added).

¶ 43    The parties agree that Watts both punched and headbutted Estrada during the incident. Yet, the State now asserts for the first time, that the headbutt was the basis for count I—the count premised on causing bodily harm to Officer Estrada. As evidence, it points to its comments in the closing argument referencing both the punch and the headbutt and that the headbutt "caus[ed] Officer Estrada to have a busted lip and bleed." We presume the State means to imply that the basis for count II was the punch, though it does not state so explicitly.

¶ 44    Our supreme court has held that apportioning acts to separate counts for the first time on appeal "would be profoundly unfair." *Crespo*, 203 Ill. 2d at 343. We note that the trial court appeared to interpret the separate counts as two theories of culpability, telling Watts in pretrial

proceedings that the battery was "charged two different ways." The State's arguments described the punch and headbutt before and during trial but nowhere attributed them to specific charges. Instead, the State narrated the punch and headbutt as part of the same incident.

¶ 45    The State's closing argument included neither the word "battery" nor direct reference to the two counts, concluding with "I would just argue that [Watts] knowingly struck Officer Estrada who was on duty that night. Thank you." Under these circumstances, Watts lacked notice that the State intended to apportion his conduct between the two charges to secure separate convictions. See *Crespo*, 203 Ill. 2d at 345 ("defendant has a fundamental right to be informed of the nature and cause of the criminal accusations").

¶ 46    The State could have assigned the punch and the headbutt to separate counts and argued as much at trial. See, e.g., *People v. Shines*, 2015 IL App (1st) 121070, ¶ 46 (upholding two counts of aggravated fleeing and eluding peace officer where record showed one count was based on defendant's high rate of speed and the other on his contravention of traffic control devices). Instead, it chose to charge Watts with the same unspecified physical act twice—striking Estrada about the body. This description does not sufficiently notify Watts that the State intended to apportion the attack's components to separate charges. On the contrary, the State's charging instruments and argument indicated it was prosecuting the attack as one battery under alternate theories of culpability.

¶ 47    The State's assignment of the punch and the headbutt to separate convictions for the first time on appeal is an improper "*post hoc* attempt to recast its prosecution." *People v. Young*, 362 Ill. App. 3d 843, 853 (2005). In *Young*, the court held that two battery convictions violated the one-act, one-crime rule where the State failed to apportion a push and a bite to separate charges,

and the record showed that the State had prosecuted the attack under alternate theories. *Id.* at 853. As explained in *Crespo*, 203 Ill. 2d at 345, "the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained," and the State's attempt to do so for the first time on appeal was improper. Accordingly, the one-act, one-crime rule requires that we vacate Watts's conviction for the less serious offense of aggravated battery involving contact of an insulting or provoking nature (count II). See *Young*, 362 Ill. App. 3d at 853 ("bodily harm" battery is more serious offense than "insulting or provoking" battery).

¶ 48     In reaching this conclusion, we are not persuaded by the State's argument that *Young* was wrongly decided. The State does not cite, and our research has not yielded, an analogous case where we upheld multiple battery convictions after the State failed to apportion acts among battery counts, as here and in *Young*. The State attempts to distinguish the cases cited by Watts, arguing that the one-act, one-crime rule requires apportionment when those acts are of an identical kind; namely, multiple punches or multiple stabs. Not so. See *In re Samantha V.*, 234 Ill. 2d 359, 377-78 (2009) (finding violation of one-act, one-crime rule where State did not apportion multiple "strikes or blows"); *Crespo*, 203 Ill. 2d at 338, 342 (same, involving multiple stabs); *People v. Catchings*, 2018 IL App (3d) 160186, ¶¶ 6, 55 (same, involving multiple punches); *Williams*, 2017 IL App (3d) 140841, ¶¶ 6, 30 (same, involving multiple strikes with baseball bat).

¶ 49     We decline the State's invitation to depart from the reasoning of *Crespo* and *Young*. Rather, we follow them in holding that, somewhere between the indictment and its argument at trial, the State must apportion closely related acts in a single course of conduct to separate counts when it

intends to seek multiple convictions. Given the State's failure here, two aggravated battery convictions for Watts's attack on Estrada constitute plain error.

¶ 50    Although the trial court convicted Watts of both aggravated battery counts, it appears to have imposed a single sentence of probation. Specifically, the court stated, "I'm going to put [Watts] on two years['] probation," without referencing either count. Likewise, the disposition sheet notes findings of guilt on both counts, but the handwritten sentence reads "2yr Probation" without attribution to either count. Similarly, the sentencing order reflects a sentence of two years' probation with a single citation to section 12-3.05(d)(4)(i) of the Criminal Code, which applied to both counts. See 720 ILCS 5/12-3.05(d)(4)(i) (West 2022).

¶ 51    Thus, the trial court may have implicitly merged the count II conviction for Watts's less serious offense (contact of an insulting or provoking nature) into the count I conviction for the more serious offense (bodily harm) for sentencing purposes and not sentenced him on count II. See *People v. Lucious*, 2016 IL App (1st) 141127, ¶¶ 62-63 (trial court properly, albeit implicitly, merged count that violated one-act, one-crime rule where it found defendant guilty of two counts but pronounced sentence on just one) (citing *People v. Childress*, 321 Ill. App. 3d 13, 26 (2001) ("There is no final judgment in a criminal case until the imposition of a sentence, and, in the absence of a final judgment, an appeal cannot be entertained.")). Though the record is vague on this point, we nevertheless vacate Watts's conviction on count II, the less serious offense. The two years' probation sentence on count I stands.

¶ 52    Affirmed in part and vacated in part.